**MB, Appellant (Respondent),**

v.

**LARAMIE COUNTY DEPARTMENT OF FAMILY SERVICES IN THE INTEREST OF LB, Appellee (Petitioner).**

**No. C–96–6.**

Supreme Court of Wyoming.

March 11, 1997.

John M. Burman, Faculty Supervisor; Donna J. Mathews, Student Director, University of Wyoming Legal Services Program, Laramie; Steven K. Sharpe, Nicholas Law Offices, Cheyenne, for appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Rowena Heckert, Sr. Assistant Attorney General; and Claudia S. Ryan Angelos, Attorney Intern., for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

M.B., the mother of L.B., appeals from an order terminating her parental rights pursuant to WYO.STAT. § 14–2–309. Applying strict scrutiny to the actions of the Department of Family Services (DFS), we hold that DFS did not follow its own rules in this case and reverse the order terminating M.B.'s parental rights to the child, L.B.

## ISSUES

Appellant M.B. presents the following statement of the issues for our review:

I. Did the District Court err when it terminated Appellant's parental rights when the statutory requirements for parental termination were not met?

II. Does the failure of the Wyoming Department of Family Services to follow the law mean that its actions were arbitrary and capricious and that termination of M.B.'s parental rights was improper?

III. Did the District Court err when it admitted testimony of M.B.'s contacts or actions occurring after the date of the filing of the Petition to Terminate Parental Rights?

Appellee Laramie County Department of Family Services presents the issues as follows:

I. Whether the district court properly applied the statutory requirements for termination of parental rights?

II. Whether Appellant's refusal to cooperate in establishing a case plan with the Wyoming Department of Family Services can serve as a defense to the termination of her parental rights?

III. Whether the district court erred when it admitted testimony of Appellant's contacts and actions occurring after the date of the filing of the petition to terminate parental rights?

## FACTS

M.B. gave birth to L.B. on February 3, 1993, in Cheyenne, Wyoming. M.B. had one supervised visit with her son, L.B., on February 4, 1993. There are no allegations that M.B. abused L.B. during that brief encounter. L.B. was placed into protective custody on February 5, 1993, because M.B. was in need of psychiatric treatment for mental illness which prevented her from adequately caring for her infant son. M.B. has schizophrenia; however, M.B. testified that, while she was pregnant, she was afraid to take the medication which treats her schizophrenia because she was afraid it would affect her baby. She was involuntarily committed to the Wyoming State Mental Hospital (State Hospital) in Evanston, Wyoming, on February 8, 1993. On that same day, L.B. was placed in the legal custody of DFS after a shelter care hearing and has been in the custody of DFS since that day. L.B. has remained in the physical custody of the same foster parents since February 5, 1993.

In April of 1993, while M.B. was at the State Hospital, she contacted DFS, asked questions about her son and requested pictures of her son. Because M.B. was involuntarily committed to the State Hospital, she could not travel to Cheyenne to see L.B. DFS did not attempt to take L.B. to the State Hospital to visit M.B. DFS completed an original case plan for M.B. and L.B. on April 9, 1993. The case plan's stated goal was family reunification. However, the possible consequences for failure to carry out the plan were permanency planning for L.B., i.e., permanent guardianship or termination of parental rights. The case plan's short term goals required M.B. to begin voluntarily taking her medication, working to treat her mental illness and working with the Immigration and Naturalization Service in Casper to become a legal citizen and remain in the country once she was released from the State Hospital. M.B. was unable to sign her case plan and DFS did not know whether she ever knew about the case plan, its goals or consequences.

On May 26, 1993, M.B. was released from the State Hospital and deported to Mexico. In December of 1993, DFS received a letter from M.B. expressing an interest in the well-being of L.B. DFS was unable to contact M.B. at the address given on the letter and did not hear anything from M.B. until June 16, 1994. On that date, a social services worker from Texas contacted DFS, told DFS that M.B. was in a mental health facility after the birth of a daughter in April of 1994, and asked if M.B. had any children in Wyoming. M.B. was involuntarily committed to the Texas mental health facility from April until July, 1994.

On August 3 and September 7, 1994, M.B. tried to contact DFS. On September 13, 1994, M.B. called DFS through her caseworker in Texas (caseworker). During that phone call M.B. asked about L.B.'s well-being and what she would need to do to get L.B. back. DFS informed M.B. to concern herself with her new daughter, complete her case plan in Texas and get her daughter back first, then she could work on getting L.B. back. M.B. was not told that she was at risk of having her parental rights to L.B. terminated if she did not maintain contact with L.B. or complete her Texas case plan in a certain amount of time. On October 26, 1994, M.B. contacted DFS, asking about L.B.'s well-being and for pictures of L.B.

On December 7, 1994, DFS contacted the caseworker in Texas and set a December 22, 1994, date for a six-month case plan review. DFS sent notice of the review meeting to the caseworker, but not to M.B., and did not know whether M.B. received notice of the meeting. On December 22, 1994, DFS called the caseworker, as scheduled, but neither the caseworker nor M.B. were there. DFS talked instead to another employee of the Texas Department of Family Services. That employee told DFS that M.B. had not been

following her case plan, but did not explain why. The employee told DFS that he did not feel M.B. would be able to follow her Texas case plan. The next day, DFS requested termination of M.B.'s parental rights because M.B. was not completing her case plan in Texas. Later, DFS learned that the caseworker was ill on December 22, 1994, making the meeting impossible because the caseworker had to drive M.B. to the social services office for the telephone meeting.

DFS filed a petition for the termination of parental rights pursuant to Wyo.Stat. § 14–2–309(a)(i) or (iii), on January 27, 1995. In March, August, and October of 1995, M.B. contacted DFS to ask about her son, stating that she wanted her son back and would fight the termination proceedings. The district court held a bench trial on January 3, 1996, accepted M.B.'s deposition, taken in Texas on January 24, and entered an order terminating M.B.'s parental rights on February 16, 1996.

## STANDARD OF REVIEW

■ "There is no question that termination of parental rights is directed toward a right that is fundamental and substantial." *In the Interest of DG*, 916 P.2d 991, 998 (Wyo.1996) (quoting *TR v. Washakie County Dep't of Pub. Assistance and Social Services*, 736 P.2d 712, 720 (Wyo.1987)). We strictly construe the application of parental rights termination statutes because of the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children. *Id.* at 995 (quoting *Matter of Adoption of JLP*, 774 P.2d 624, 627–29 (Wyo.1989)). Due to the fundamental nature of the rights affected by a termination action, the procedures involved must satisfy due process and the evidence supporting a termination must be clear and convincing. *Id.* The fundamental fairness and propriety of the procedures invoked in a termination proceeding may be reviewed on a case-by-case basis. *Id.* (quoting *JLP*, 774 P.2d at 627–29, which cites *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *Lassiter v. Dep't of Social Services of Durham County, North Carolina*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)).

## DISCUSSION

■ The Laramie County Department of Family Services (DFS) filed a petition for termination of parental rights pursuant to Wyo.Stat. § 14–2–309(a)(i) and/or (a)(iii) (1994).[1] In its findings of fact, conclusions of law and order terminating M.B.'s parental rights, the district court accepted DFS's proposed findings of fact and conclusions of law in their entirety. However, even if the court found clear and convincing evidence of facts sufficient to terminate M.B.'s parental rights pursuant to Wyo.Stat. § 14–2–309, the district court did not address the failure of DFS to follow its own rules pertaining to case plans, placement plans, family reunification and child protection. As we discuss below, the failure of DFS to follow its own rules for the protection of children and preservation of families is dispositive in this case.

DFS has promulgated certain child protection rules which are applicable to this termination of parental rights case because they provide a structure within which the Department accomplishes its statutory responsibilities. Department of Family Services Division of Youth Services Child Protection Rules (1995) ("Rules"). When family reunification is the case plan goal, as it was here,

---

1. Wyo.Stat. § 14–2–309(a)(i) and (iii) (1994) provides:

 (a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

 (i) The child has been left in the care of another person without provision for the child's support and without communication from the absent parent for a period of at least one (1) year. In making the above determination, the court may disregard occasional contributions, or incidental contacts and communications;

 * * *

 (iii) The child has been abused or neglected by the parent and efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent;

 * * *.

DFS has the responsibility to attempt to rehabilitate the mother and reunite the family, providing services necessary to help the parent accomplish certain specified goals and tasks. WYO.STAT. § 14–2–309(a)(iii) (1994); Rules, Ch. 1 § 2, 5 and 6(c), Ch. 3 § 5. In this case DFS's failure to follow its own rules affected M.B.'s fundamental right to remain the legal parent of L.B.

In the original, and only, case plan DFS wrote for M.B., DFS failed to list any tasks for M.B. to complete in order to attain the goals it laid out for her. Rules, Ch. 1 § 4(f), Ch. 3 § 4(c). DFS then failed to update or review the original case plan, again in violation of its own rules. Rules, Ch. 1 § 4(f) (case plans should be time limited), § 7 (Department "shall" perform functions, including case planning, six and eighteen month reviews and hearings), Ch. 3 § 4(a) (written case plans shall be reviewed every six months and updated as needed). DFS claims that it told M.B. she must comply with the Texas case plan, get her child in Texas back, then work on getting L.B. back. However, none of this "oral case plan" was put in writing, in violation of DFS rules. Rules, Ch. 1 § 4(e), Ch. 3 § 4(a), (c). DFS failed to provide M.B. with a written case plan and therefore with notification of its intent to terminate M.B.'s parental rights if she failed to comply with that case plan. There is no evidence in the record that M.B. was told at any time that her failure to comply with her "oral" Wyoming case plan or her Texas case plan would result in the termination of her parental rights to L.B.

Finally, L.B. was placed in a foster home when he was taken away from M.B. Therefore, the rules applying to placement plans apply to M.B. and L.B. From the record provided us, it appears DFS also failed to follow its rules concerning placement plans which "shall be completed on a Department form" and include: efforts made to return the child to his family, place the child in as close proximity to his home as possible, completion of a visitation plan between the parent and the child, and six month periodic court or administrative reviews shall be held for each child in placement. Rules, Ch. 3 § 4(d), (d)(iv) and (vi), (e), and (g).

 Rules and regulations have the force and effect of law. *Fullmer v. Wyoming Employment Sec. Comm'n,* 858 P.2d 1122, 1123–24 (Wyo.1993). An administrative agency, such as DFS, is bound to follow its own rules and regulations. *Id.* In this case, the DFS rules in question affected M.B.'s fundamental parental rights. Therefore, they must be followed strictly and failure to follow those rules and procedures must result in a reversal of the action taken when a parent's rights are terminated. *Matter of Adoption of SLS,* 808 P.2d 207, 209 (Wyo.1991) (reversing termination of parental rights accomplished through adoption statutes). We vacate the order terminating M.B.'s parental rights and remand with directions that the petition to terminate M.B.'s parental rights be dismissed.

## CONCLUSION

Because DFS failed to follow its own rules pertaining to its child protection case plans, services and placement plans and that failure adversely affected M.B.'s fundamental rights, we reverse the district court's order terminating M.B.'s parental rights.