Rebecca A. PAINTER, M.D.,
Appellant (Petitioner),

v.

Duane ABELS, D.O. and Randal C. Moseley, M.D. and Wyoming Board of Medicine, Appellees (Respondents).

No. 99–161.

Supreme Court of Wyoming.

March 3, 2000.

Representing Appellant: Tom C. Toner of Yonkee & Toner, Sheridan, Wyoming.

Representing Appellees: Don W. Riske, Special Assistant Attorney General, Representing Appellees.

Before LEHMAN, C.J.; THOMAS, MACY, and GOLDEN, JJ.; and JOHN C. BRACKLEY, D.J.

JOHN C. BRACKLEY, District Judge.

Appellant Rebecca A. Painter, M.D. (Dr. Painter) is the holder of a Wyoming Physician's License. Appellee Wyoming Board of Medicine (Board) is the licensing and regulatory board charged with admitting physicians to the practice of medicine and overseeing their conduct.

Dr. Painter petitioned the district court for review of the Board's March 1, 1999, administrative order which conditioned her practice of medicine and required her to pay certain costs of administrative proceedings. The district court stayed enforcement of the order and certified review to the Wyoming Supreme Court.

We reverse the Board's order.

### ISSUES

The parties suggested numerous issues. We consolidate them into two:

A. Did the Board's procedure generally deviate from statutory, evidentiary, and constitutional standards?

B. Is the Board's assessment of costs herein arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?

## FACTS

Two Board members were appointed to investigate a patient complaint which had been lodged against Dr. Painter in May of 1997. The investigating Board members filed a formal complaint on July 3, 1997, alleging Dr. Painter's diagnosis and treatment of the patient fell below the standard of care and constituted unprofessional conduct. The complaint sought revocation, suspension, or restriction of Dr. Painter's license to practice medicine in Wyoming. Dr. Painter objected in a written response.

Pursuant to administrative rules, the Board scheduled an "informal interview" of Dr. Painter for December 3, 1997. Dr. Painter lived in Gillette, but the interview was scheduled to be conducted in Rock Springs. Dr. Painter's requests to reschedule the interview to give her attorney an opportunity to attend and to move the site closer to Gillette were denied. Dr. Painter personally attended the December 3, 1997, interview in Rock Springs. Her attorney observed by telephone.

On December 4, 1997, Dr. Painter contacted the Governor's office and complained about what she considered to be hostile and unprofessional treatment by the Board. On January 30, 1998, the Governor's office sent a letter to Dr. Painter, suggesting she ask the Board for another interview by different Board members in the presence of her attorney. On January 31, 1998, before another interview was requested, the Board issued a "Report and Recommendation of Interviewers." This report included a finding that there was reasonable cause to believe Dr. Painter was "impaired" as defined by Wyo. Stat. Ann. § 33–26–102(a)(vii)(A) (LEXIS 1999):

> (vii) "Impaired" means a person who cannot practice medicine with reasonable skill and safety to patients by reason of one (1) or more of the following:
>
> (A) Medical incompetence[.]

Additionally, the report recommended that Dr. Painter undergo a mental and medical competency examination pursuant to authority contained in Wyo. Stat. Ann. § 33–26–403(a) (LEXIS 1999).

On February 3, 1998, Dr. Painter received notice that she was to appear for a competency examination on February 13, 1998, in Cheyenne. It did not include notice of her right under Wyo. Stat. Ann. § 33–26–403(d) (LEXIS 1999) and Board rules to designate another physician to be present and make an independent report to the Board. Board rules specifically require that physicians being examined be notified of the foregoing right. Dr. Painter objected to the short notice. She said she was unable to find an independent physician who could attend on February 13, 1998, but appeared as ordered. The examination was conducted by three Wyoming physicians appointed solely by the Board. This examination was attended by her attorney and was recorded by a court reporter.

Dr. Painter received a letter dated March 30, 1998, from the Board which stated that the examination committee had submitted its report on March 6, 1998. The letter suggested a "consent decree" could resolve the case. Dr. Painter had not received a copy of the examination report so she requested a copy. The Board refused to deliver a copy of the examination committee's report—in fact, Dr. Painter had not received a copy of the report at the time of oral arguments before this Court in October of 1999. The Board claims the report is a confidential "board record" pursuant to Wyo. Stat. Ann. § 33–26–408(c) (LEXIS 1999):

> (c) All board records except final orders are not subject to public disclosure or discovery and are not admissible in any non-board proceeding except when necessary for further board action or upon judicial review of a board order.

In response to publicity the case had generated, another former patient of Dr. Painter's wrote a complaining letter to a Gillette newspaper in March of 1998. On May 11, 1998, the Board filed a motion for leave to amend the complaint against Dr. Painter to add additional counts of negligence or malpractice regarding this second patient. On May 22nd and 23rd of 1998, the Board took Dr. Painter's deposition and filed a second motion for leave to file a second amended complaint. On July 1, 1998, the hearing

officer entered an order allowing the Board to file such amendments. On August 12, 1998, a second amended complaint was filed by the Board which alleged five counts:

(1) Negligence of Dr. Painter in her diagnosis and treatment of hypoadrenalism of patient HS in violation of Wyo. Stat. Ann. § 33–26–402(a)(xxii) (LEXIS 1999) which proscribes negligence or malpractice;

(2) Negligence of Dr. Painter in her diagnosis and treatment of a thyroid condition of patient TP in violation of § 33–26–402(a)(xxii) which proscribes negligence or malpractice;

(3) Unprofessional conduct of Dr. Painter contrary to recognized standards of ethics of the medical profession and, therefore, a violation of Wyo. Stat. Ann. § 33–26–402(a)(xxvii) (LEXIS 1999) based upon the manner in which Dr. Painter conducted a "case study" of patient HS with the Electro Dermal Screening (EDS) mechanism and Dr. Painter's conduct in that regard did not meet the requirements of the American Medical Association's Code of Medical Ethics and Current Opinions with Annotations, op. 2.07 (1998–99 Ed.);

(4) Willful and consistent utilization of medical service which is inappropriate or unnecessary by Dr. Painter in violation of Wyo. Stat. Ann. § 33–26–402(a)(xviii) (LEXIS 1999) based upon her conducting the EDS procedure on approximately fifty patients, her prescribing for such patients, including HS, a "serum" which she prepared using the EDS mechanism and a mixture of alcohol and water when such testing and treatment have no proven medical efficacy and are not scientifically supported as being appropriate for diagnosis or treatment of human disease, injury, deformity, or ailment; and

(5) Willful and consistent utilization of medical service which is inappropriate or unnecessary by Dr. Painter in violation of § 33–26–402(a)(xviii) based upon her recommendations, prescription, and/or sale to a number of her patients, including TP, of a thirty-day Herbal Detoxification Program from the Pure Body Institute when such program has no proven medical effi-

cacy and is not scientifically supported as being appropriate for diagnosis or treatment of human disease, injury, deformity, or ailment.

On September 10th, 11th, and 12th of 1998, the Board conducted a contested case hearing in Casper. The proceedings occurred before the attorney hearing officer hired by the Board and a three-member hearing panel composed of Board members. The Board gave counsel for the parties an opportunity to conduct *voir dire* of hearing panel members. Dr. Painter's motion to disqualify members of the hearing panel for prejudice was denied.

The hearing officer held an *in camera* review of the report generated from the February 13, 1998, competency examination and granted the Board's request to keep it from Dr. Painter. After presentation of testimony, the hearing officer granted Dr. Painter's motion to dismiss the fourth and fifth counts.

In February of 1999, the hearing panel issued findings of fact, conclusions of law, and a proposed order. Even though the panel concluded that Dr. Painter "is a conscientious and concerned physician, and the treatment prescribed to the two patients herein reviewed did not result in harm to them," the panel recommended sanctions regarding the first, second, and third counts. The Board's final order of March 1, 1999, found by a preponderance of the evidence that Dr. Painter had violated lawful expectations contained in the negligence allegations of the first and second counts and the ethical allegations of the third count.

The Board ordered Dr. Painter to: (1) complete a four-week training course "in the senior elective Endocrinology rotation at the University of Utah School of Medicine" by July 1, 1999; and (2) cooperate with periodic, random reviews of her office charts by a Board certified internist for one year after completing the rotation. Additionally, Dr. Painter was ordered to pay one-half the costs of the contested case hearing, "specifically, the costs of the Court Reporter and transcript, the Hearing Officer's fees and expenses, the travel, lodging and meals of the Hearing Panel members and the Petitioners' lay and expert witness fees and expenses."

On March 11, 1999, Dr. Painter filed a petition for review of the Board's decision in the district court. The district court entered an order staying enforcement of the Board's order pending completion of judicial review and certified the case to this Court.

## STANDARD OF REVIEW

The Medical Practice Act at Wyo. Stat. Ann. § 33–26–407 (LEXIS 1999) provides for judicial review of Board actions pursuant to the Wyoming Administrative Procedure Act (WAPA). Under Wyo. Stat. Ann. § 16–3–114(c) (LEXIS 1999) of the WAPA:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

## STATUTES

Wyo. Stat. Ann. § 33–26–402(a) (LEXIS 1999) provides grounds for sanctions in Board disciplinary proceedings:

(a) The board may refuse to grant or renew, and may revoke, suspend or restrict a license or take other disciplinary action on the following grounds:

. . .

(xxii) Negligence or malpractice;

. . .

(xxvii) Unprofessional or dishonorable conduct not otherwise specified in this subsection, including but not limited to:

(A) Any conduct or practice:

(I) Contrary to recognized standards of ethics of the medical profession;

(II) Which does or may constitute a substantial risk of:

(1) Danger to the health or safety of a patient or the public; or

(2) Impairing a physician's ability to safely and skillfully practice medicine.

Wyo. Stat. Ann. § 33–26–405 (LEXIS 1999) addresses the range of sanctions the Board had available:

(a) Following a hearing to refuse to renew or reinstate, revoke, restrict or suspend a license on the grounds that a licensee is impaired or has engaged in errant conduct, the board shall enter its order and findings pursuant to the Wyoming Administrative Procedure Act. The board may take one (1) or more of the following actions:

(i) Dismiss the proceedings;

(ii) Issue a public or private reprimand;

(iii) Order probation and provide terms;

(iv) Impose a civil fine not exceeding five thousand dollars ($5,000.00);

(v) Suspend the license;

(vi) Revoke the license;

(vii) Place restrictions on the license;

(viii) Assess part or all of the cost of the proceeding against a disciplined licensee;

(ix) Take other action as the board in its discretion finds proper.

(b) Restriction of a license may include, but is not limited to, the following:

(i) Restricting the practice to certain areas of medicine or forbidding the practice of certain areas of medicine;

(ii) Requiring the licensee to practice medicine under the supervision of another physician in a clinic or other controlled setting;

(iii) Forbidding the use of certain medical procedures without consultation with another physician.

Wyo. Stat. Ann. § 33–26–403 (LEXIS 1999) provides:

(a) The board may order a licensee to undergo one (1) or more mental, physical competency or medical competency examinations if it has reasonable cause to believe that the licensee is impaired.

. (b) Every licensee is deemed to have consented to submit to a board requested mental, physical, or medical competency examination and waived all objections to the admissibility of the results of the examination in board proceedings on the ground that the results constitute a privileged communication. If a licensee fails to submit to an examination when requested by the board, the board may suspend the license unless the failure was beyond the licensee's control.

(c) If the board finds that there is reasonable cause to conduct an examination, it shall appoint three (3) practicing licensees who are not board members to serve as an examination committee. At least one (1) of the licensees shall be a psychiatrist if a question of mental illness is involved and, if available, at least one (1) member shall be from the same medical specialty as the licensee under investigation. The examination committee shall conduct an examination and report its recommended findings to the board within thirty (30) days following appointment.

(d) The licensee may submit additional information to the board, including but not limited to medical reports, consultations or laboratory reports. The licensee may also designate another physician to be present at the examination and make an independent report to the board.

Section 33–26–407(b) states the standard of review for disciplinary proceedings:

(b) In any disciplinary proceeding against a licensee or a person charged with practicing medicine without a license, the board shall bear the burden of proving a violation of this act by a preponderance of the evidence.

## DISCUSSION

**A. Did the Board's procedure generally deviate from statutory, evidentiary, and constitutional standards?**

Dr. Painter contends Board actions or procedures violated statutory, evidentiary, and/or constitutional standards as follows:

1. The Board failed to provide notice of Dr. Painter's right to have an independent physician in attendance at the mental and medical competency examination;

2. The Board refused to give Dr. Painter the report resulting from her mental and medical competency examination;

3. The Board permitted improper *ex parte* contacts between the prosecuting attorney at the contested case hearing and the Board sitting as the decision maker;

4. The Board failed to provide expert testimony to prove Dr. Painter engaged in conduct contrary to standards of the medical profession and hence violated ethical rules; and

5. The Board used a preponderance of the evidence standard instead of a clear and convincing evidence standard.

We address these contentions in order:

**1. NOTICE OF RIGHT TO HAVE AN INDEPENDENT PHYSICIAN IN ATTENDANCE AT THE MENTAL AND MEDICAL COMPETENCY EXAMINATION**

Section 33–26–403(d) and Board rules provide examined licensees the right to designate an independent physician to be present and to submit an independent report to the Board. Board of Medicine Rules and Regulations, ch. 4, *Rules of Practice and Procedure for Disciplinary Complaints Against Physicians* § 4(f)(iv)(D) (1997). Here, Dr. Painter received notice on Febru-

ary 3, 1998, that she was to submit to a mental and medical competency examination on February 13, 1998. She did not receive notice of her right to designate an independent physician. Understandably, Dr. Painter objected to the short notice and appeared at the examination without waiving her objection to the Board's failure to comply with its rules regarding notice.

▇ Administrative rules and regulations have the force and effect of law. *MB v. Laramie County Department of Family Services in Interest of LB*, 933 P.2d 1126, 1130 (Wyo.1997). An administrative agency is bound to strictly follow its own rules and regulations. *Id.* Failure to do so may result in reversal of the agency's action. Here, the Board's failure to provide Dr. Painter notice of the right to designate an independent physician, coupled with the short time frame between delivery of the notice and date of the examination, effectively precluded her from exercising the right to provide independent analysis.

    2.   DENYING DR. PAINTER THE REPORT RESULTING FROM HER MENTAL AND MEDICAL COMPETENCY EXAMINATION

▇ As discussed, the Board ordered that Dr. Painter submit to a mental and medical competency examination. The statute assumes the results of any examination are admissible as evidence in Board proceedings as § 33–26–403(b) provides:

> (b) Every licensee is deemed to have consented to submit to a board requested mental, physical, or medical competency examination and waived all objections to the admissibility of the results of the examination in board proceedings on the ground that the results constitute a privileged communication.

The Board denied all of Dr. Painter's requests for copies of the examination report, claiming denial was authorized by § 33–26–408(c):

> (c) All board records except final orders are not subject to public disclosure or discovery and are not admissible in any non-board proceeding except when necessary for further board action or upon judicial review of a board order.

▇ Statutes must be read as a whole and in conjunction with other statutes on the same subject matter. *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993). When § 33–26–403(b) and § 33–26–408(c) are read together, it is clear that § 33–26–408(c) relates to confidentiality regarding third persons unrelated to the proceeding. The report is not confidential as between the proceeding's actual parties. To hold otherwise would allow the Board to unilaterally decide whether to disclose either inculpatory or exculpatory facts. That, of course, is not how the adversarial system of law works and cannot be what the statutes intend.

▇ The Board deprived Dr. Painter of due process by withholding the report. Basic notions of fairness and due process prohibit requiring an accused (civil or criminal) to be evaluated or examined and then using the results in the prosecution without affording the accused the right to have the results to prepare a response. *See Mishler v. State Board of Medical Examiners*, 109 Nev. 287, 849 P.2d 291, 297 (1993) (a board abuses its power when it uses its own rules of confidentiality as an excuse to obstruct a doctor's access to evidence); *Christiansen v. Missouri State Board of Accountancy*, 764 S.W.2d 943, 952 (Mo.Ct.App.1988) (denying licensee the right to material pertaining to a disciplinary proceeding is contrary to concept of fairness and tantamount to denial of due process).

    3.   CONTACTS BETWEEN THE PROSECUTING ATTORNEY AT THE CONTESTED CASE HEARING AND THE BOARD SITTING AS THE DECISION MAKER

▇ Dr. Painter alleges improper *ex parte* contacts occurred between the Board's attorney (who represented the Board and prosecuted Dr. Painter at the contested case hearing) and the Board sitting as decision maker. She asserts these contacts adversely affected her right to a fair, unbiased hearing. Due process requires that an agency provide a fair trial without the appearance of bias or prejudice. *State Transportation Commission of Wyoming v. Ford*, 844 P.2d 496, 497–

98 (Wyo.1992); *ANR Production Company v. Wyoming Oil and Gas Conservation Commission,* 800 P.2d 492, 499 (Wyo.1990); Wyo. Stat. Ann. § 16–3–112(a) (LEXIS 1999). Additionally, Wyo. Stat. Ann. § 16–3–107(k) (LEXIS 1999) (emphasis added) prohibits the following contacts:

> (k) ... Any person representing an agency at a hearing in a contested case in which the agency is a party shall not in the same case serve as presiding officer *or provide ex parte advice regarding the case to the presiding officer or to the body or any member of the body comprising the decision makers.*

The record and oral arguments make it clear the Board's attorney: (1) advised the Board throughout the development of the case against Dr. Painter; (2) prosecuted the case before the hearing panel which was comprised of Board members; and (3) continued to advise the Board during preparation of the final findings and order. The separation of these functions is necessary to assure fairness. The contacts between the Board and its attorney violated § 16–3–107(k) and contributed to the overall appearance of unfairness regarding the proceedings.

Additionally, the hearing officer originally ordered that two members of the Board were disqualified from sitting on the hearing panel or participating in decision making. However, one of those disqualified members signed the Board's final order. The Board claims the signature was merely a ministerial function, but this act, in conjunction with others, contributes to the appearance of unfairness.

4. EXPERT TESTIMONY REGARDING WHETHER CONDUCT WAS CONTRARY TO STANDARDS OF THE MEDICAL PROFESSION AND HENCE VIOLATED ETHICAL RULES

▮ The Board found Dr. Painter's participation in a patient case study using an EDS machine was unprofessional conduct "contrary to recognized standards of ethics of the medical profession" under the American Medical Association's Code of Medical Ethics, *supra,* and thus a violation of § 33–26–402(a)(xxvii). The Code of Medical Ethics, *supra,* requires that participation in any such

clinical study be part of a systematic program competently designed under accepted standards of scientific research to produce scientifically valid and significant data. The Board provided no expert testimony on this count. We addressed virtually the same issue in *Devous v. Wyoming State Board of Medical Examiners,* 845 P.2d 408, 418 (Wyo. 1993), in regard to § 33–26–402(a)(xv), (xviii), and (xxvi):

> The crux of the issue is whether the record must include expert testimony with respect to [the pertinent] statutory grounds, or whether we must acknowledge and accept the expertise of the Board members in establishing standards that demonstrate infringement of the statute.... If judicial review has any purpose, it must be exercised by objectively evaluating evidence in the record. There is no way that a judicial review could reach the subjective determination of standards by individual members of the Board.

Just as expert testimony is needed in the above paragraphs, it is also essential in paragraph (xxviii). Without expert testimony from the Board on the issue, no substantial evidence exists to sustain the allegation. *Devous,* 845 P.2d at 418.

5. CONSTITUTIONALITY: PREPONDERANCE OF THE EVIDENCE STANDARD VERSUS CLEAR AND CONVINCING EVIDENCE STANDARD

We have previously held that clear and convincing evidence is required to discipline the holder of a medical license. *Devous,* 845 P.2d at 416; *see also JM v. Department of Family Services,* 922 P.2d 219, 223 (Wyo. 1996) (clear and convincing evidence standard applies in professional disciplinary hearings). However, in 1995 the Wyoming legislature adopted a preponderance of the evidence standard for Board disciplinary proceedings. Section 33–26–407(b).

▮ Statutory enactments are presumed to be constitutional, and one who challenges a statute on constitutional grounds bears the burden of showing the statute is unconstitutional beyond a reasonable doubt. *Hoem v. State,* 756 P.2d 780, 782 (Wyo.1988). While this Court has the duty to maintain the

constitutionality of statutes when possible, " 'it is equally imperative that we declare them invalid when they transgress the Wyoming Constitution.' " *Id.* (quoting *Brenner v. City of Casper*, 723 P.2d 558, 560 (Wyo. 1986)). Dr. Painter alleges the Board's reliance on the statutory preponderance standard rather than on a clear and convincing standard violated her constitutional rights to due process and equal protection.

### Equal Protection Analysis

■ Dr. Painter contends no rational reason exists for requiring the Board to prove its case by a preponderance of the evidence standard while other licensing boards must adhere to a clear and convincing evidence standard. Equal protection " 'mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed.' " *Frank v. State By and Through Wyoming Board of Dental Examiners*, 965 P.2d 674, 678 (Wyo.1998) (quoting *Allhusen v. State By and Through Wyoming Mental Health Professions Licensing Board*, 898 P.2d 878, 884 (Wyo.1995)).

■ Equal protection claims are reviewed under one of two levels of legal scrutiny. *Id.* (citing *Allhusen*, 898 P.2d at 885). Claims involving either a member of a "suspect class" or a "fundamental right" are subject to a "strict scrutiny" test. Basically, this inquiry is whether the action is necessary to support a *compelling* state interest. Where the equal protection claim does not involve a suspect class or fundamental right, the analysis involves deciding whether the action bears a *rational relationship* to a *legitimate* state interest.

When examining cases discussing these constitutional approaches, one might see little practical difference between the "strict scrutiny" and "rational relationship" tests. Still, the type of test applied helps illustrate the priority and/or emphasis owed to the different types of claims. Perhaps we should have been more specific when using the word "fundamental" in prior opinions. *Compare Frank*, 965 P.2d at 679 (" 'there is no fundamental interest involved in the practice of medicine . . . or any other profession' "), *with Slagle v. Wyoming State Board of Nursing*,

954 P.2d 979, 982 (Wyo.1998) ("Slagle's license to practice—a property right—and her right to earn a living—a liberty interest—are so fundamental that such rights cannot be restricted by agency action without the agency first giving notice of the alleged grounds for sanctions").

■ To clarify, we hold there is no constitutional "fundamental right" to a *license* that triggers "strict scrutiny" review during professional license disciplinary proceedings. This case and future professional license discipline cases shall be decided by determining whether the action bears a rational relationship to a legitimate state interest.

By prescribing a "preponderance of the evidence" burden for disciplining physicians, § 33–26–407(b) attempts to treat physicians differently from other professions—even those also in the health care field. Holders of other professional licenses in Wyoming (dentists, nurses, pharmacists, optometrists, veterinarians, attorneys, architects, land surveyors, and engineers) may be disciplined only if the agency finds "clear and convincing" evidence against them.

Of course, the legislature has a substantial interest in regulating "occupations requiring special knowledge or skill affecting the public health, safety, and welfare." *Allhusen*, 898 P.2d at 887. The legislature (and sometimes the licensing agency) has the power to set high standards for entry into and practice of a profession. However, this power must be balanced against the principles that: (1) persons have a basic liberty interest in pursuing vocations; and (2) once a license is granted, the licensee has a substantial property right in the license that allows pursuit of the profession without unreasonable governmental interference.

■ This Court finds no rational relationship to a legitimate state interest in the statute requiring a lesser burden of proof against a physician versus other professionals (particularly health care professionals) in disciplinary proceedings. As Dr. Painter points out, a nurse's negligence can kill a patient as quickly and surely as a doctor's. We hold that, in disciplinary proceedings, the Board must prove disciplinary cases by clear

and convincing evidence. Consequently, we must also hold that § 33–26–407(b) is unconstitutional on equal protection grounds.

### Due Process Analysis

■ Procedural due process protected by the state and federal constitutions also affects the burden of proof exercised in a medical license disciplinary proceeding. The burden applied serves " 'to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.' " *Johnson v. Board of Governors of Registered Dentists of State of Oklahoma,* 913 P.2d 1339, 1345 (Okla.1996) (quoting *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)).

■ In *Slagle,* we held:

The Fourteenth Amendment to the United States Constitution and Wyo. Const. art. 1, §.6 guarantee the right to due process before a governmental agency may interfere with one's property interest in a professional license or one's liberty interest in a right to earn a living. Due process guarantees apply to administrative proceedings which restrict or limit a professional license.

954 P.2d at 982. Minimum due process protections are a matter of federal law. *Mondt v. Cheyenne Police Department,* 924 P.2d 70, 74–75 (Wyo.1996). The right to due process is conferred not by legislative grace through enactment of a burden of proof licensing statute but by constitutional guarantee.

■ A clear and convincing burden of proof standard is normally used where civil proceedings against a licensee involve allegations of quasi-criminal wrongdoing (as in this case). Potential loss of a license is " 'more substantial than mere loss of money and some jurisdictions reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof.' " *Johnson,* 913 P.2d at 1345 (quoting *Addington,* 441 U.S. at 424, 99 S.Ct. 1804) ("quasi-criminal" label is also discussed in *Fallon v. Wyoming State Board of Medical Examiners,* 441 P.2d 322, 326 (Wyo. 1968)).

■ Analysis of constitutional burdens of proof should consider the three factors identified in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The *Mathews* factors balance: (1) the nature of the individual's private interest affected by the proceeding; (2) the state's interest to be furthered by the proceeding; and (3) the fact finder's risk of error under the burden of proof employed.

(1) The private interest in a professional license is substantial. In these administrative proceedings, Dr. Painter faced the potential loss of: (a) a protected property right; (b) her livelihood; and (c) her professional reputation.

(2) The state's interest in protecting the health, safety, and welfare of its citizens from a medical licensee's incompetence or misconduct is legitimate and substantial.

(3) The risk of error is high in a proceeding seeking to revoke a medical license. *See Johnson,* 913 P.2d at 1346. As in many administrative action cases, the risk increases where the agency acts as investigator, prosecutor, and decision maker (as occurred here). This Board investigated the complaint, members of the Board served as the complaining party, the Board's legal advisor prosecuted the case, and Board members made the final decision.

■ In balancing all three factors, we find the statutory preponderance standard fails to protect Dr. Painter's basic interests. Due process requires that the Board prove its disciplinary cases by clear and convincing evidence. As a result, we hold § 33–26–407(b) is also unconstitutional on due process grounds. This holding arguably gives Wyoming licensees greater due process protection than is required by the United States Constitution. This is permissible. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Individual freedoms and protections are a priority in Wyoming.

When the Supreme Court declares a statute unconstitutional, the matter can be remanded to give an agency opportunity to prove its case under the proper burden.

However, this case requires complete reversal due to significant other defects in the proceedings.

**B. Is the Board's assessment of costs herein arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?**

■ The Board's final order assessed Dr. Painter one-half the cost and expenses of the hearing officer. The provision of § 33–26–405(a)(viii) allowing assessment of "part or all of the cost of the proceeding against a disciplined licensee" does not include the costs and expenses of the hearing officer. *Devous* made it clear those costs are improper. 845 P.2d at 419. Therefore, the Board's assessment of these costs against Dr. Painter is capricious and not in accordance with law.

## CONCLUSION

Because some Board action was not in accordance with state law and some was contrary to constitutional standards, the referenced order is reversed. Therefore, all requirements and assessments of costs against Dr. Painter are stricken.