2007 WY 196

**In the Matter of the Parental Rights to D.H., A.P., and J.K.**

**K.H., Appellant (Respondent)**

v.

**Wyoming Department Of Family Services, Appellee (Petitioner).**

No. C-07-2.

Supreme Court of Wyoming.

Dec. 12, 2007.

---

Representing Appellant: Matthew F.G. Castano, Brown & Hiser, LLC, Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Dan S. Wilde, Senior Assistant Attorney General; Stacey L. Obrecht, Assistant Attorney General. Argument by Ms. Obrecht.

Guardian Ad Litem: Eric Eugene Jones, Wheatland, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]  Appellant KH (Mother) appeals the district court's decision terminating her parental rights.  We affirm.

## ISSUE

[¶ 2]  Mother presents two issues, but we find her first to be dispositive:

> Whether the [d]istrict [c]ourt erred [by] terminating the parental rights of Mother when the Department of Family Services had failed to comply with its own written policy of attempting to place children with relatives prior to placing them in non-relative foster care.

## FACTS

[¶ 3]  Mother has three children: JK, born in 1995, AP, born in 1996, and DH, born in 1999.  Each child has a different father.  In January 2006, the Department of Family Services (DFS) initiated this action to terminate the parental rights of Mother and the three fathers to the children.  One father, KH's husband at the time, consented to the termination of his parental rights.  The other two fathers did not respond to the petition, and the district court terminated their parental rights.  Mother contested the petition and a trial was held on August 9, 2006.  Following the trial, the district court found that Mother's parental rights should be terminated pursuant to Wyo. Stat. Ann. §§ 14–2–309(a)(iii) and (a)(v) (LexisNexis 2007).

[¶ 4]  The evidence at trial established that DFS had numerous contacts with Mother prior to August 2004.  Despite DFS involvement, the children remained in the custody of Mother and her current husband, who was DH's father.  The family resided in Cheyenne at the time.  On August 21, 2004, Mother and Husband were arrested and incarcerated in Platte County.  In response, DFS took custody of the children and initiated a neglect proceeding in Laramie County Juvenile Court pursuant to Wyo. Stat. Ann. § 14–3–412.  The case was eventually transferred to Platte County.  In conjunction with the neglect proceedings, DFS developed a case plan to facilitate family reunification and to create a family environment that would be in the best interests of the children.  The case plan, in general terms, required Mother and Husband to attend parenting classes and to obtain counseling to address domestic violence and substance abuse issues.  The plan required Mother and Husband to obtain employment and to secure safe and suitable housing for the children.  The plan provided Mother and Husband with the opportunity for regular visitation with the children.  They both consented to the plan.

[¶ 5]  Initially, Mother made little effort to comply with the plan.  She stepped up her efforts when Husband was again arrested, but those efforts were sporadic and short-lived.  Mother attended some parenting classes but did not complete the program.  She sought and obtained counseling related to the domestic violence and substance abuse issues but terminated counseling of her own volition. She did not obtain employment until it was made a condition of her probation in March 2005.  The employment she did obtain

was part-time and she did not hold any job for long.

[¶ 6] Even though Mother took some steps that her case plan required, DFS observed that Mother had not developed the capability to parent her children. This became apparent during her visits with the children. The visits were first supervised, and later unsupervised but periodically monitored. While the children were reasonably well behaved in their foster homes, they acted quite differently as Mother's visits approached and during the visits. The two younger children cried and protested that they did not want to visit Mother. Their behavior worsened during the visits. The caseworker described the children "lighting matches, slamming doors that knocked the pictures off the wall and then [the pictures] broke, and [AP] got cut." After one day into an extended Thanksgiving visit in 2005, the caseworker reported, Mother's home "was pretty much trashed." During the Christmas holiday visit that same year, the DFS worker observed that the oldest child was nailing blankets to the beds, and that "[t]he children fought continually over games, over food, over everything." Mother was unable to manage this behavior, and requested assistance from DFS caseworkers and the foster parents. In addition to her difficulties in managing the children, mother had not found stable housing or employment. DFS, on one occasion, discovered that Mother left the children in the care of a person not approved for childcare. After the Christmas 2005 visit, DFS elected to return to shorter, supervised visits that continued until Mother's parental rights were terminated.

[¶ 7] After obtaining custody, DFS placed the children with Husband's father and stepmother in Wheatland, Wyoming. Approximately four months later, Husband's father and stepmother decided that they no longer wanted to care for the children. The children were then placed in foster care. At some point not clear in the record, Mother submitted to DFS the names of four relatives and asked the agency to consider them for family placement. One of the names submitted was Mother's mother (Grandmother) who lived in Alabama with her boyfriend.[1] After Grandmother was identified by Mother as a potential family placement option, DFS sought a report on Grandmother's home from the State of Alabama pursuant to the Interstate Compact on the Placement of Children (ICPC). Alabama's report revealed that Grandmother had outstanding warrants for her arrest in several states and her boyfriend had been convicted of a sexual offense involving a child. Grandmother and her boyfriend were also uncooperative with the Alabama authorities. They supplied the Alabama caseworker with a false address and repeatedly failed to appear for their appointments with the caseworker. At the time of trial, Grandmother was no longer seeing the boyfriend and had moved to Mississippi. A new ICPC request was pending in that state, but no report had been completed by the time of the trial.

[¶ 8] The State filed its petition for termination of parental rights in January 2006, more than 15 months after it obtained custody of the children following Mother's arrest. The State sought termination pursuant to Wyo. Stat. Ann. §§ 14–2–309(a)(iii) and (a)(v). After the August 2006 bench trial, the district court found that the State had satisfied its burden under both statutory provisions and severed Mother's parental rights to all three children. Mother now appeals.

### DISCUSSION

[¶ 9] The district court terminated Mother's parental rights pursuant to sections 14–2–309(a)(iii) and 14–2–309(a)(v), which state:

> The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:
>
> . . .
>
> (iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously

---

1. Mother contests only DFS's decision not to place the children with Grandmother.

jeopardized by remaining with or returning to the parent;

. . .

(v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child.

In support of its decision to terminate Mother's parental rights, the district court concluded:

[KH] neglected the children ... by her inability to care for the children while incarcerated, and by failing to adequately provide parenting, security, supervision and care for the children before her incarceration.... The Wyoming Department of Family Services made reasonable efforts to reunite [KH] with her children by providing counseling, parenting classes, caseworkers, case plans, visitation, in-home parenting opportunities, employment assistance through the Power Work Program and housing assistance.... In spite of those efforts to reunite [KH] with the children, [KH] remains unable to adequately comprehend or meet the needs of the children for appropriate parenting and stability. The efforts to "rehabilitate" this family have been unsuccessful.... The children's health and safety would be seriously jeopardized by returning them to [KH] at this time.... Each of the children ha[s] been in foster care under the responsibility of the State of Wyoming for more than 15 of the most recent 22 months.

[¶ 10]  Mother does not claim that the district court's conclusions are not supported by clear and convincing evidence.  Nor does she assert that the facts fail to meet the statutory requirements for termination of parental rights.  Instead, Mother's position is that DFS should have placed her children with Grandmother because DFS's *Family Services Manual* encourages its employees to place children with family members rather than in foster homes.  Mother asserts that DFS's failure to comply with the *Manual* invalidates the termination of her parental rights.  For support, she relies on our decision in *MB v. Dep't of Fam. Svcs.*, 933 P.2d

1126 (Wyo.1997).  *MB* is factually distinguishable from Mother's case, and provides no support for her appellate position.  Moreover, the record shows that DFS did indeed take reasonable steps to institute a family placement, and its actions cannot be viewed as contrary to the *Family Services Manual's* directives.

[¶ 11]  In *MB*, the State had removed MB's son, placed him in a foster home, and eventually sought to terminate MB's parental rights.  The district court entered an order terminating the rights, and MB appealed.  We reversed, noting that, "[i]n this case, the DFS rules in question affected M.B.'s fundamental parental rights."  *MB*, 933 P.2d at 1130.  We also stated that where DFS's violations of its own rules affect a parent's fundamental rights, the rules "must be followed strictly and failure to follow those rules and procedures must result in a reversal of the action taken when a parent's rights are terminated."  *Id.*

[¶ 12]  Mother's situation differs significantly from the factual scenario presented in *MB*.  In *MB*, all the rules violated by DFS directly affected MB's ability to avoid termination of her parental rights.  For example, her case plan provided end goals, but "failed to list any tasks for M.B. to complete in order to attain the goals."  *Id.* DFS also failed to provide a written case plan to MB and, critically, failed to give her notice that her parental rights could be terminated if she did not comply.  *Id.* Finally, DFS's failure to follow its rules concerning foster placement affected MB's ability to visit her child, and thus the probability of a speedy reunification.  *See id.*  It is unsurprising, then, that we held that "the DFS rules in question affected M.B.'s fundamental parental rights."  *Id.*

[¶ 13]  Mother, in contrast, does not dispute that she knew her case plan and that DFS notified her of the goals she would have to meet to achieve family reunification.  Importantly, Mother does not claim, nor does the record show, that she did not receive explicit notice that failure to meet her goals could result in termination of her parental rights.  DFS's placement actions affected neither her ability to visit her children nor

her ability to maintain and strengthen her relationship with them. Indeed, the plan affirmatively required Mother to have regular visits with the children. Mother's relationship with her children suffered in spite of the case plan and placement decisions, not because of them.

[¶ 14] Even if we were to evaluate DFS's placement actions, we would not conclude that DFS violated its rules. The agency initiated home evaluations for each relative Mother submitted. Grandmother's home was clearly not an appropriate placement choice. Aside from her general uncooperativeness with the Alabama authorities, Grandmother was, at the time of the evaluation, living with a man convicted of felony child sexual abuse. In addition, Grandmother had outstanding warrants for her arrest. Despite the results from the Alabama home evaluation, DFS requested a second home evaluation in Mississippi. The State was under no obligation to wait for the Mississippi evaluation to be completed before filing a petition to terminate Mother's parental rights. The children had been in foster care for 15 of the previous 22 months, and accordingly, DFS was empowered by statute to commence termination proceedings. Wyo. Stat. Ann. §§ 14–2–309(a)(v), 14–2–310, 14–3–431(m). Considering the obvious risks to the children's well being, DFS was justified in declining to place them in Grandmother's household.

[¶ 15] Mother also claims that her trial counsel was ineffective by failing to introduce additional portions of the *Family Services Manual* into evidence. In light of our resolution of Mother's substantive claim, we need not address the ineffectiveness of counsel issue.

[¶ 16] Affirmed.