[No. 34137. Department One. January 2, 1958.]

*In the Matter of the Revocation of the License to Practice Medicine and Surgery of* JEAN D. KINDSCHI.[1]

[1]Reported in 319 P. (2d) 824.

*Paul D. Coles* and *Woolvin Patten*, for appellant.

*The Attorney General* and *Roy C. Fox, Assistant*, for respondent.

FINLEY, J.—Dr. Kindschi's license to practice medicine and surgery in the state of Washington was suspended for eight months by the medical disciplinary board for alleged unprofessional conduct as defined in RCW 18.72.030(1). He appealed to the superior court for Thurston county, which affirmed the suspension. The matter is now before us for review.

The medical disciplinary board was established by the state legislature in 1955. It was given broad powers to discipline members of the medical profession for unprofessional conduct. It may reprimand a doctor, or may suspend or revoke his license. Unprofessional conduct is defined in RCW 18.72.030. The portions thereof pertinent to this appeal read as follows:

"The term 'unprofessional conduct' . . . shall mean

. . .

"(1) Conviction in any court of any offense involving moral turpitude, in which case the record of such conviction shall be conclusive evidence; . . ."

On May 4, 1956, Dr. Kindschi entered a plea of guilty in the United States district court for eastern Washington to a charge of willfully attempting to evade a portion of his

proper income taxes for the calendar year, 1949, *by filing a false and fraudulent return.*

The charge involved violation of § 145(b) of the internal revenue code of 1939, as amended, which reads as follows (p. 221):

"(b) . . . Any person . . . who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony . . ."

On August 17, 1956, the medical disciplinary board issued notice to Dr. Kindschi that a hearing would be held on September 22, 1956, in Seattle to determine whether his license to practice medicine should be revoked. In its specification of charges, the board set out the above-mentioned conviction of tax evasion and charged that the offense involved moral turpitude, and constituted unprofessional conduct within the meaning of the medical disciplinary act.

Dr. Kindschi made timely written reply to the specification. He admitted pleading guilty to the Federal offense, but denied that it involved moral turpitude or constituted unprofessional conduct.

When the hearing committee of the medical disciplinary board convened, the chairman announced (a) that it was the opinion of the attorney general of the state of Washington that the crime for which Dr. Kindschi had been convicted involved moral turpitude; and (b) that the opinion of the attorney general fully settled the question in so far as the board was concerned. The chairman specifically foreclosed any hearing on the question, and counsel have stipulated that no evidence was taken at the hearing concerning the facts and circumstances involved in the violation by Dr. Kindschi of the internal revenue act.

█ It is somewhat difficult to classify a medical disciplinary proceeding. It is characterized as civil, not criminal, in nature; yet it is quasi criminal in that it is for the protection of the public, and is brought because of alleged misconduct of the doctor involved. Its consequence is unavoidably punitive, despite the fact that it is not designed

entirely for that purpose. It is not strictly adversary in nature. It is essentially a *special*, somewhat unique, statutory proceeding, in which the medical profession (under state authorization through the medical disciplinary board) inquires into the conduct of a member of the profession and determines whether disciplinary action is to be taken against him in order to maintain sound professional standards of conduct for the purpose of protecting (a) the public, and (b) the standing of the medical profession in the eyes of the public. *Cf. In re Little*, 40 Wn. (2d) 421, 244 P. (2d) 255.

It may be argued that, since it is not strictly a criminal proceeding, the principles of due process and equal protection (guaranteed by the fourteenth amendment) do not apply. On that question, however, the United States supreme court is the final arbiter, and in a recent opinion (*Schware v. Board of Bar Examiners of New Mexico* (1957), 353 U. S. 232, 1 L. Ed. (2d) 796, 77 S. Ct. 752), that court stated:

"A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. . . . [citing cases]. A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a *rational connection with the applicant's fitness or capacity to practice law.*" (Italics ours.)

In the *Schware* case, *supra*, the court was dealing with *admission* to practice *law*; but it follows, logically, that the due process clause and the equal protection clause of the fourteenth amendment apply with much force to proceedings in which a practitioner's license may be *revoked or suspended*. The following footnote in the *Schware* opinion, *supra*, emphasizes this view:

"We need not enter into a discussion whether the practice of law is a 'right' or 'privilege.' Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons. Cer-

tainly the practice of law is not a matter of the State's grace. *Ex Parte Garland*, 4 Wall. 333, 379."

. The United States supreme court has not required that due process and equal protection standards relative to criminal trials are *necessarily entirely* applicable to disciplinary proceedings relative to state granted licenses to practice professionally.

RCW 18.72.030 (1) proscribes as unprofessional conduct "conviction in any court of any offense involving moral turpitude." Tax fraud involves moral turpitude. *Jordan v. DeGeorge, infra; In re Seijas, ante* p. 1, 318 P. (2d) 961. In our judgment, a willful and intentional attempt to avoid payment of all or a part of one's income tax with intent to defraud the government involves moral turpitude. Such fraud is unprofessional conduct as that term is defined in the medical disciplinary act.

The daily practice of medicine concerns life and death consequences to members of the public. They have an understandable interest in the maintenance of sound standards of conduct by medical practitioners. The public has a right to expect the highest degree of trustworthiness of the members of the medical profession. We believe there is a rational connection between income tax fraud and one's fitness of character or trustworthiness to practice medicine, so that the legislature can properly make fraudulent conduct in such instances a ground for revoking or suspending the license of a doctor.

Dr. Kindschi was charged with violating a Federal criminal statute. We look, therefore, to the decisions of the Federal courts to discern the elements necessarily involved in the crime to which he pleaded guilty.

There is some conflict and some doubt under the decisions of the Federal courts as to whether fraud (moral turpitude) inheres in every violation of § 145 (b). See concurring opinion in *In re Seijas, supra*. But there is no doubt under the Federal cases that fraud must be proved when the method of defeating or evading tax alleged in an indictment is by the filing of a false and fraudulent income

tax return. *Berra v. United States* (1955), 351 U. S. 131, 100 L. Ed. 1013, 76 S. Ct. 685; *Achilli v. United States* (1957), 353 U. S. 373, 1 L. Ed. (2d) 918, 77 S. Ct. 995; *United States v. Rosenblum* (1949, CA 7th), 176 F. (2d) 321; *United States v. Raub* (1949, CA 7th), 177 F. (2d) 312; *Norwitt v. United States* (1952, CA 9th), 195 F. (2d) 127.

■ The method of tax evasion charged in the indictment of Dr. Kindschi was that of filing false and fraudulent returns. He pleaded guilty to that charge. We hold that the issue of fraud (moral turpitude) was determined conclusively by his plea of guilty to the crime as charged. He has no right to a new hearing before the medical disciplinary board as to the presence or absence of moral turpitude in his violation of § 145 (b). The summary proceedings by the medical disciplinary board were appropriate in the instant case.

■ One further point merits discussion. Appellant has challenged the moral turpitude standard as too vague in cases such as this, where different opinions may exist as to the presence or absence of moral turpitude in the crime committed. In *Jordan v. DeGeorge* (1951), 341 U. S. 223, 95 L. Ed. 886, 71 S. Ct. 703, the United States supreme court stated:

"We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. . . . Impossible standards of specificity are not required . . . [Citing cases]. The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . . [Citing cases].

"We conclude that this test has been satisfied here. Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. We have recently stated that doubt as to the adequacy of a standard in less obvious cases does not render that standard unconstitutional for vagueness."

14

We think the foregoing quotation disposes of appellant's void-for-vagueness contention.

■ This court has the responsibility for disciplining members of the legal profession. In the recent case of *In re Seijas, supra,* we disbarred a lawyer for Federal income tax fraud. In contrast, in the instant case, the medical disciplinary board suspended a doctor from the practice of medicine for eight months. In terms of the protection of the public through disciplinary proceedings in matters of professional conduct, we can see no difference in income tax fraud—whether it is perpetrated by a lawyer or a doctor. We have no authority over the disciplining of members of the medical profession for unprofessional conduct. If the disciplining of the doctor by the medical disciplinary board in the instant case seems mild, the responsibility for this must be assumed by the medical disciplinary board. The legislature has vested authority and complete responsibility in the medical disciplinary board in such matters.

The judgment of the trial court is affirmed.

HILL, C. J., MALLERY, ROSELLINI, and OTT, JJ., concur.