148 P.3d 1029 (2006)
Alice ONGOM, Petitioner,
v.
STATE of Washington, DEPARTMENT OF HEALTH, OFFICE OF PROFESSIONAL STANDARDS, Respondent.
No. 76618-5.
Supreme Court of Washington, En Banc.
December 14, 2006.
Claudia Kilbreath, Short Cressman & Burgess PLLC, Seattle, WA, for Petitioner.
Christopher George Swanson, Washington State Dept of Health, Maureen A. Hart, Attorney at Law, Carol A. Murphy, Attorney General's Office, Olympia, WA, for Respondent.
SANDERS, J.
¶ 1 By a mere preponderance of the evidence in an administrative hearing, Alice Ongom's nursing assistant's registration was suspended for alleged abuse of a patient. *1030 Ongom appealed to the Superior Court which affirmed, as did the Court of Appeals. Ongom v. Dep't of Health, 124 Wash.App. 935, 104 P.3d 29 (2005). We granted review and reverse, holding due process requires clear, cogent, and convincing proof.

FACTS
¶ 2 Fleeing Africa as a refugee, Alice Ongom escaped to the United States with her family making her new home in Washington. The State then registered her to practice as a nursing assistant in July 2000. By February 2001 Ms. Ongom was employed in that capacity at the Woodmark Retirement Home in Federal Way.
¶ 3 On the evening of February 22, 2001, an incident transpired between Ms. Ongom and an Alzheimer's resident. As a result the nursing assistant program of the Department of Health issued a statement of charges against Ms. Ongom, alleging that she engaged in unprofessional conduct in violation of RCW 18.130.180(24). She was also criminally charged with fourth degree assault.[1]
¶ 4 Thereafter, on April 4, 2002, the Department conducted an administrative hearing to consider allegations of unprofessional conduct. Three witnesses testified: coworker Rebecca Bristlin; Woodmark program director Jocelyn Umagat, LPN; and respondent Ongom. The State was represented by the attorney general; however, Ms. Ongom, who speaks English only as her second language, represented herself pro se. Besides considering the testimony of these three witnesses, the health law judge also considered various documents including a prior written statement by Ms. Ongom and an affidavit of Franciska Chmielewski, another coworker who witnessed the incident. Chmielewski was unable to attend the hearing but generally supported Ms. Ongom's version of the events. As acknowledged by the hearing officer, the evidence was in serious conflict.
¶ 5 Bristlin claimed she observed respondent Ongom pick up a cup or dish from the floor and throw it at an Alzheimer's resident, slap the resident on the hands several times, and kick her on the left ankle or lower leg. However, Ms. Bristlin admitted she did not report the incident to management until the following day, contrary to a policy which required immediate reporting of such events.
¶ 6 Respondent Ongom testified that this particular resident had been aggressively violent toward her since the very first day of her employment and that she had frequently accosted her with racist remarks on various occasions, including the evening in question.[2] Nonetheless respondent testified that she held no ill will toward the resident as she understood the resident to be sick and not responsible for her actions. Respondent testified that the resident threw silverware and/or dishes at her that evening and that she (Ongom) suffered an injury to her shoulder as a result of being hit by a dish thrown by the resident. Ms. Ongom denied ever picking up the dish although she testified that she did take a plate from the resident to prevent further injury to herself or others, receiving no help from other caregivers in the room.
¶ 7 Ms. Chmielewski supported Ongom's version of the events, stating under oath that she saw the resident throw a glass, that she did not see Ms. Ongom throw anything at the resident, and that the resident "was well-known to staff for her aggressive behavior toward both staff and other residents. She sometimes kicked [] staff, and I have learned she assaulted another resident." Clerk's Papers (CP) at 173.
¶ 8 Finding that the program proved its case by no more than a mere preponderance, the hearing officer concluded the State had not proved its case by clear and convincing evidence. He found:
The Presiding Officer concludes the Program did not prove its case by clear and convincing evidence. The Presiding Officer concludes this is so because there are conflicting witness statements whether the Respondent touched Resident A or threw *1031 anything at Resident A. Additionally, there was a period of time between the time the incident in question, and when Resident A's injury was diagnosed or assessed. Finally, the[re] was evidence to show that Resident A was combative and known to kick out on her own. While the evidence provided by the Program is of the type that "reasonably prudent persons are accustomed to rely upon in the conduct of their affairs," (see WAC 246-10-606), it is not of the type that is "highly probable" (see State Farm Fire & Cas. Co. v. Huynh, 92 Wash.App. 454, 962 P.2d 854 (1998)), following a review and consideration of all of the evidence in the record.
CP at 112 (Findings of Fact, Conclusions of Law and Final Order). Nevertheless, the presiding officer suspended Ongom's license because WAC 246-10-606 requires only proof by a preponderance of the evidence and WAC 246-10-602(3)(c) provides, "The presiding officer shall: . . . (c) [n]ot declare any statute or rule invalid."
¶ 9 After concluding a preponderance of the evidence supported the charge of unprofessional conduct and further concluding the violation was "moderate in nature," CP at 111, the presiding officer suspended Ms. Ongom's license for 24 months. The presiding officer also ordered her to complete the Healthcare Integrity and Protection Data Bank Reporting Form (section 1128E of the Social Security Act, 42 U.S.C. § 1320a-7e), id., and promptly return the form to the Nursing Assistant Program, thereby establishing a permanent public record of the disciplinary measure.
¶ 10 The nursing home fired Ongom immediately after the incident in question. Ongom testified that "since that time I did go to school, I've been suffering without job, I can't get a job. I got one one place and I work for a day and then they stop me." CP at 242 (hearing transcript, docket no. 01-07-B-1031 NA (4/4/02)). "And the job I don't get, I came here as a refugee and I am being put this kind of thing, it really made me very, feel very bad." Id.

ANALYSIS
¶ 11 We review this administrative decision pursuant to the Administrative Procedure Act, chapter 34.05 RCW, and apply the "error of law" standard of RCW 34.05.570(3)(d) to the agency's legal conclusions. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 728, 818 P.2d 1062 (1991).
¶ 12 We must determine whether proof by a preponderance of the evidence in a professional license disciplinary proceeding satisfies due process. For the reasons expressed in Bang Nguyen v. Department of Health, 144 Wash.2d 516, 29 P.3d 689 (2001),[3] we conclude that due process requires clear and convincing proof. Accord Miss. State Bd. of Nursing v. Wilson, 624 So.2d 485, 493 (Miss.1993) ("The standard of proof required for a decision of the Board of Nursing in cases involving fraud or conduct deemed quasi-criminal in nature is clear and convincing evidence."); Hogan v. Miss. Bd. of Nursing, *1032 457 So.2d 931, 934 (Miss.1984). Accordingly, we reverse and dismiss.
¶ 13 As stated, the identical issue was resolved in our recent Nguyen decision.[4] Dr. Nguyen was disciplined under the same statute (RCW 18.130.180) as was Ms. Ongom. As is always the case, there are certain factual and technical differences between the proceedings; however, we conclude the differences do not constitute a distinction justifying disparate treatment for Ms. Ongom under the generalized considerations set forth in Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[5]
¶ 14 We noted in Nguyen that "[a] professional disciplinary proceeding subjects a medical doctor to grave concerns which include the potential loss of patients, diminished reputation, and professional dishonor." Nguyen, 144 Wash.2d at 521, 29 P.3d 689. Although undoubtedly a medical license is much more difficult to obtain than a registration to practice as a nursing assistant, each constitutes a lawful entitlement to practice one's chosen profession. We cannot say Ms. Ongom's interest in earning a living as a nursing assistant is any less valuable to her than Dr. Nguyen's interest in pursuing his career as a medical doctor. See Nims v. Bd. of Prof'l Eng'rs & Land Surveyors, 113 Wash.App. 499, 505, 53 P.3d 52 (2002) ("[T]he time and money spent on training has so little bearing on disciplinary proceedings that it cannot, by itself, justify a higher or lower burden of persuasion."). We reject the Court of Appeals conclusion that "the property interest in a nursing assistant's license, while not insignificant, is considerably more limited than the property interest in a license to practice medicine." Ongom, 124 Wash. App. at 944, 104 P.3d 29. The licenses may be different, but nurses and medical doctors have an identical property interest in licenses that authorize them to practice their respective professions.
¶ 15 We also recognized Dr. Nguyen has a liberty interest in his license to preserve his professional reputation. Nguyen, 144 Wash.2d at 527, 29 P.3d 689. So too does Ms. Ongom. True, Ms. Ongom's employment is probably much less financially rewarding than that of a medical doctor, but it is nevertheless all she has, and she is at least equally dependent upon her professional reputation for employment. Here a notice of her discipline for allegedly abusing a patient was posted in a national register by order of the hearing examiner, accessible by all the public as well as future prospective employers. There is no reason to believe that the damage to her professional reputation in the context of her life to be any less damaging than Dr. Nguyen's. We therefore disagree with the comment of the Court of Appeals that "[a] nursing assistant who loses her license may suffer some slight damage to her reputation, but any such damage does not approach the significant stigma attached to loss of the right to practice medicine." Ongom, 124 Wash.App. at 944, 104 P.3d 29. To the contrary, loss of reputation to one marginally qualified for a modest occupation is potentially more damaging than the loss of reputation for a highly qualified medical specialist, such as Dr. Nguyen, who may have many more alternate career opportunities. In either case, professional discipline is stigmatizing. It is more than mere money and is thus entitled to a higher standard of proof.[6] *1033 Nguyen, 144 Wash.2d at 524-25, 29 P.3d 689; Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
¶ 16 The Court of Appeals also attempted to distinguish Nguyen by claiming "Ongom's license was suspended for only 24 months, whereas Bang Nguyen's license was indefinitely revoked and he was prohibited from seeking from relicensure for five years." Ongom, 124 Wash.App. at 945-46, 104 P.3d 29. We do not believe, however, that the constitutional standard of proof in a proceeding can be determined only after its outcome is known. "[T]he burden of persuasion should not vary according to the nature of the charges in the particular case." Nims, 113 Wash.App. at 505, 53 P.3d 52. For example in this proceeding the State had urged the presiding officer to suspend Ms. Ongom's license not for 2 years but 10. The burden of proof does not differ based on result of a particular proceeding or the nature of the charges.
¶ 17 Further, the Court of Appeals claims the risk of error in Nguyen's proceeding before a commission which applied a somewhat subjective criteria was greater than the risk of error in the instant proceeding conducted under the Administrative Procedure Act where "objective facts" are at issue. The Court of Appeals suggests, "[t]he use of an objective standard lessens the need for a more stringent standard of proof." Ongom, 124 Wash.App. at 947, 104 P.3d 29.
¶ 18 While there are certainly some differences in the facts and procedures at issue, we think the facts of this case, as found by the hearing officer, illustrate these differences do not justify a distinction in the eyes of the law and that the potential risk of error is not appreciably different. Here, the presiding officer explained his inability to determine the facts by clear and convincing evidence where two versions of diametrically opposed testimony were presented. Under the Administrative Procedure Act judicial review defers to the factual findings of the administrative hearing officer and, as was the case with Dr. Nguyen, provides no greater assurance against error.
¶ 19 Finally the Court of Appeals attempts to distinguish Nguyen based upon the nature of the governmental interest, claiming that the inquiry is not about the additional fiscal burden, if any, on the State to employ a higher burden of proof but rather the ultimate governmental interest which justifies the licensing scheme in the first place. We rejected a similar argument in Nguyen:
The last factor called to our attention by Mathews is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335 [96 S.Ct. 893]. As one can quickly discern from a simple reading of the text, this requirement relates to practical and financial burdens to be imposed upon the government were it to adopt a possible substitute procedure for the one currently employed. As the Supreme Judicial Court of Massachusetts phrased it, the last factor examines "the government's interest in the efficient and economic administration of its affairs." Thompson v. Commonwealth, 386 Mass. 811, 438 N.E.2d 33, 37 (1982). This requirement does not relate to the interest which the government attempts to vindicate through the procedure itself.
Nguyen, 144 Wash.2d at 532, 29 P.3d 689.
¶ 20 Unlike the court in Mathews, we cannot say the "additional cost in terms of money and administrative burden"[7] would be substantial were a higher burden of proof required. As we pointed out in Nguyen, "[a]n increased burden of proof would not have the slightest fiscal impact upon the state, as it would not appreciably change the nature of the hearing per se." Nguyen, 144 Wash.2d at 532, 29 P.3d 689. The same is true here.
¶ 21 Even if the interest to be considered was, as the Court of Appeals put it, that "interest in protecting the public from incompetent or abusive nursing assistants," Ongom, 124 Wash.App. at 948, 104 P.3d 29, we cannot see how that interest is any greater than the State's interest to protect the public from incompetent or abusive medical doctors *1034 who are subject to discipline under the same statute  or, for that matter, the criminal law which requires proof beyond a reasonable doubt. As the Court of Appeals observed in Nims, it makes no sense to say that doctors who present the "greater risk [] should receive the benefits of a higher . . . burden of persuasion" to prompt discipline than a lower-risk vocation. 113 Wash.App. at 505, 53 P.3d 52.
¶ 22 More fundamentally as we noted in Nguyen, the ultimate government interest is best furthered by medical disciplinary proceedings which reach an accurate and reliable result. Cf. Addington v. Texas, 441 U.S. 418, 426, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ("Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings."); Santosky v. Kramer, 455 U.S. 745, 766-68, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (a standard of proof more strict than preponderance of the evidence is consistent with promoting the State's interest in a parental rights termination proceeding). Accuracy in disciplinary proceedings involving those registered to practice as nursing assistants is not less important than those involving medical doctors.

CONCLUSION
¶ 23 In sum, this case is on all fours with Nguyen: The minimum constitutional standard of proof in a professional disciplinary hearing is clear and convincing evidence. WAC 246-10-606 is invalid because it requires only a preponderance. Accordingly we reverse the Court of Appeals, dismiss the statement of charges, and direct that Ms. Ongom recover her statutory costs at trial and on appeal.[8]
WE CONCUR: GERRY L. ALEXANDER, C.J., TOM CHAMBERS, CHARLES W. JOHNSON, and JAMES M. JOHNSON, JJ.
ALEXANDER, C.J. (concurring).
¶ 24 While I recognize that courts in other jurisdictions might reach a different conclusion than that which we reach here, I am in accord with the majority's determination that this court's decision in Bang Nguyen v. Department of Health, 144 Wash.2d 516, 29 P.3d 689 (2001), is controlling precedent in this state. Consequently, I agree that allegations of professional misconduct mandated under RCW 18.130.180 must be proved by clear and convincing evidence. I write separately only to express my disagreement with two aspects of Justice Madsen's concurrence in dissent.
¶ 25 First, I do not believe that it is appropriate for this court to reach an issue that was not asserted by the department of health, to wit: whether there is sufficient evidence on the record to satisfy the higher clear and convincing standard. See concurrence in dissent at 1037. As Justice Madsen acknowledges, during the entire course of the proceedings herein, the department has maintained only that due process and the nature of the interests at stake here required no greater standard of proof than the preponderance of the evidence standard and that the evidence was sufficient to meet that burden. Id. Because the issue of whether the State proved its case by clear and convincing evidence was not raised, we should not address it.
¶ 26 Even if we were to address the issue, I disagree with Justice Madsen's conclusion that the department of health proved by clear and convincing evidence that Alice Ongom abused one of her patients. See concurrence in dissent at 1037-38. As the majority correctly observes, the hearing examiner determined, after considering all the evidence before him, that the department did "not prove[] its case by clear and convincing evidence." Majority at 1030. In absence of substantial evidence to the contrary in this *1035 record and in light of the directly conflicting witness testimony about the events in question,[1] the appropriate course for this court to take is to defer to the hearing examiner's legal conclusion. We should not engage, as Justice Madsen does, in a reweighing of the evidence. See, e.g., In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 568, 974 P.2d 325 (1999) (a reviewing court gives deference to an administrative decision maker's conclusions and to the weight accorded to conflicting evidence, particularly when the credibility and veracity of witnesses are at issue).
WE CONCUR: RICHARD B. SANDERS, and JAMES M. JOHNSON, JJ.
OWENS, J. (dissenting).
¶ 27 The majority holds that the constitutionally required standard of proof in all medical disciplinary hearings is clear and convincing evidence. Majority at 1030. The majority relies on Bang Nguyen v. Department of Health, 144 Wash.2d 516, 29 P.3d 689 (2001), to invalidate WAC 246-10-606, the regulation establishing the preponderance of evidence standard of proof for professional disciplinary hearings under the Uniform Disciplinary Act, chapter 18.130 RCW. I dissent because Nguyen was wrongly decided. I would overrule Nguyen and hold that the constitutionally required standard of proof in registered nursing assistant disciplinary proceedings is preponderance of the evidence.[1] Accordingly, because there is substantial evidence in the record supporting the superior court's determination that the State proved its case by a preponderance of the evidence, I would affirm the suspension of Alice Ongom's registered nursing license.

ANALYSIS
¶ 28 The State must provide "due process of law" whenever it deprives any person of "life, liberty, or property." U.S. Const. amend. XIV, § 1; Wash. Const. art. I, § 3. Professional disciplinary proceedings must satisfy due process requirements. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 732, 818 P.2d 1062 (1991) (citing In re Revocation of License of Kindschi, 52 Wash.2d 8, 11-12, 319 P.2d 824 (1958)). The Washington Constitution provides no more procedural due process protections than does the United States Constitution. See State v. Manussier, 129 Wash.2d 652, 679, 921 P.2d 473 (1996) (stating, "[t]he Gunwall[[2]] factors do not favor an independent inquiry under article I, *1036 section 3 of the state constitution"); see also City of Bremerton v. Widell, 146 Wash.2d 561, 579, 51 P.3d 733 (2002) (indicating the similarity between the state and federal provisions). Thus, "`federal decisions regarding due process are afforded great weight.'" Manussier, 129 Wash.2d at 680, 921 P.2d 473 (quoting Rozner v. City of Bellevue, 116 Wash.2d 342, 351, 804 P.2d 24 (1991)). Such precedent requires this court to overrule Nguyen.
¶ 29 The Nguyen Decision is Incorrect and Harmful. Under the doctrine of stare decisis, this court will abandon a previously established rule only upon "'a clear showing that [the] rule is incorrect and harmful.'" Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004) (quoting In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970)). The majority relies on Nguyen to support its holding that the Constitution requires "clear and convincing" standard of proof in all professional disciplinary proceedings. Majority at 1031. However, in Nguyen, through erroneous application of the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),[3] and through application of faulty logic, this court inappropriately changed the emphasis of procedural due process protections. Specifically, in balancing the Mathews factors, the Nguyen majority erroneously overemphasized the importance of private interests and diluted the other Mathews factors. This error is harmful because it unnecessarily constrains the State's ability to protect the public from exposure to incompetent health care workers.

1. The Nguyen majority misapplied Mathews.

¶ 30 In Mathews, the Court pinpointed three factors used in "identif[ying] . . . the specific dictates of due process." 424 U.S. at 335, 96 S.Ct. 893. The third factor of the Mathews test is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. (emphasis added) (citing Goldberg v. Kelly, 397 U.S. 254, 263-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). The Nguyen majority held that this third factor only "relates to practical and financial burdens to be imposed upon the government were it to adopt a possible substitute procedure" and "does not relate to the interest which the government attempts to vindicate through the procedure itself." 144 Wash.2d at 532, 29 P.3d 689 (emphasis added). In other words, the Nguyen majority limited the scope of the third Mathews factor to administrative and pecuniary concerns. Such a limitation is contrary to the language used in Mathews, in which the Court described the third factor as "the Government's interest, including the function involved." 424 U.S. at 335, 96 S.Ct. 893 (emphasis added).
¶ 31 The Nguyen majority's limitation of the third factor of the Mathews test is also contrary to a vast body of precedent. Time and time again, both before and after Nguyen, this court, in applying the third Mathews factor, has considered broader governmental interests in addition to administrative and pecuniary burdens. See, e.g., City of Bremerton v. Hawkins, 155 Wash.2d 107, 110, 117 P.3d 1132 (2005) (considering the governmental interest in protecting the public from drivers who fail to comply with state laws); Born v. Thompson, 154 Wash.2d 749, 755-56, 117 P.3d 1098 (2005) (considering the governmental interests of "prosecuting misdemeanors" and "increasing public safety"); In re Harris, 98 Wash.2d 276, 286-87, 654 *1037 P.2d 109 (1982) (considering the "State's interest in nonemergency detention of those who present a likelihood of danger to themselves or others"); Ritter v. Bd. of Comm'rs, 96 Wash.2d 503, 511, 637 P.2d 940 (1981) (considering the public interest in "insuring competent, careful medical attention at all times").[4] As a result of this misapplication of the third Mathews factor, the Nguyen majority erroneously deemphasized the governmental interests at stake and unnecessarily tipped the Mathews scale in favor of the intermediate standard of proof in professional disciplinary cases.

2. The Nguyen decision conflicts with Santosky.

¶ 32 The Nguyen majority's analysis of the second Mathews factor is contrary to the Court's holding in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The second Mathews factor requires us to consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335, 96 S.Ct. 893. In Santosky, the Court stated that it "never has approved case-by-case determination of the proper standard of proof for a given proceeding." 455 U.S. at 757, 102 S.Ct. 1388. The Court further explained that "[s]tandards of proof, like other `procedural due process rules[,] are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions.'" Id. (emphasis added) (alteration in original) (quoting Mathews, 424 U.S. at 344, 96 S.Ct. 893).
¶ 33 Nevertheless, in balancing the second Mathews factor, the Nguyen decision relied on case-specific considerations. Specifically, the Nguyen majority considered whether the agency acted "`as investigator, prosecutor, and decision maker'" and whether the charges brought against Dr. Nguyen were primarily objective or subjective. 144 Wash.2d at 531, 29 P.3d 689 (quoting Painter v. Abels, 998 P.2d 931, 941 (Wyo.2000)). Thus, the Nguyen majority did not properly follow the Mathews test, as delineated in Santosky, because it made case-specific considerations such as whether there was a right to a hearing by an unbiased tribunal or the right to judicial review.[5] The Nguyen majority weakened the public's ability to properly discipline all health care workers by extrapolating a sweeping legal rule from the peculiar facts of Dr. Nguyen's case. The State should not be disadvantaged in all future medical disciplinary proceedings because of the specific facts and charges at issue in Nguyen.

3. The Nguyen decision conflicts with Addington.

¶ 34 The Nguyen majority relied on Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), to justify a bright-line rule that the clear and convincing standard of proof is constitutionally required whenever an interest at stake is "more important than the interest against erroneous imposition of a mere money judgment." Nguyen, 144 Wash.2d at 525, 29 P.3d 689. However, in *1038 Addington, the Court held that the intermediate standard is required only "to protect particularly important individual interests in various civil cases" such as cases involving deportation and denaturalization. 441 U.S. at 424, 99 S.Ct. 1804. The Addington Court simply recognized that "some jurisdictions" use the intermediate standard and that the "intermediate standard . . . `is no stranger to the civil law.'" Id. (quoting Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). This is a far cry from the bright-line rule that the Nguyen majority labeled a constitutional requirement.
¶ 35 Instead of adopting a bright-line rule, the Addington Court conducted a Mathews balancing test to determine whether the intermediate standard of proof was required for indefinite civil commitments. Id. at 425-27, 99 S.Ct. 1804. Subsequent United States Supreme Court decisions have upheld the preponderance standard in quasi-criminal disciplinary proceedings. See Steadman v. Sec. & Exch. Comm'n, 450 U.S. 91, 103-04, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) (upholding the preponderance standard in a disciplinary proceeding against a stockbroker as constitutionally permissible); Rivera v. Minnich, 483 U.S. 574, 579-82, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987) (upholding the preponderance standard to determine paternity, "`an interest far more precious than any property right'" (quoting Santosky, 455 U.S. at 758-59, 102 S.Ct. 1388)). These decisions make it clear that, contrary to our holding in Nguyen, the Constitution does not require courts to apply a heightened standard of proof in all cases involving more than a "mere money judgment."[6]
¶ 36 Ignoring this precedent, the Nguyen majority primarily relied on Painter, 998 P.2d 931, a Wyoming Supreme Court decision, to support its bright-line rule. In Painter, the Wyoming court held that "[d]ue process requires that the Board prove its disciplinary cases by clear and convincing evidence." Id. at 941. However, in so ruling, the Painter court noted that "[t]his holding arguably gives Wyoming licensees greater due process protection than is required by the United States Constitution." Id. Unlike the Wyoming Constitution, the Washington Constitution does not provide greater procedural due process protection than is required by the United States Constitution. See, e.g., Manussier, 129 Wash.2d at 679, 921 P.2d 473. Thus, contrary to the Nguyen majority's analysis, Painter supports the conclusion that the preponderance standard is constitutionally sufficient in professional disciplinary proceedings in Washington. Accordingly, I would reject the bright-line rule adopted in Nguyen.

4. The Nguyen majority applied faulty logic.
¶ 37 The Nguyen majority stated the following:

*1039 [S]ociety . . . has the important dual interests that (1) Dr. Nguyen's standard of practice not fall below the acceptable minimum and (2) he not be erroneously deprived his license, as that would erroneously deprive the public access to and benefit from his services. Here each interest dictates a more exacting burden than mere preponderance.
144 Wash.2d at 526, 29 P.3d 689. The Nguyen majority's contention that ensuring a minimum level of a physician's standard of care dictates a higher standard than the preponderance of evidence standard is nonsensical. Logic dictates that a heightened standard of proof will make it more difficult, not less difficult, for the State to properly discipline incompetent professionals. Apparently, the majority in the present case agrees with this point, as it eschews the Nguyen argument and instead chooses to cite the reasoning from Nims v. Board of Registration for Professional Engineers & Land Surveyors, 113 Wash.App. 499, 53 P.3d 52 (2002). Majority at 1034. The majority, relying on Nims, admits the absurdity of the reasoning employed in Nguyen, stating, "it makes no sense to say that doctors who present the `greater risk [] should receive the benefits of a higher . . . burden of persuasion' to prompt discipline than a lower-risk vocation." Id. (quoting Nims, 113 Wash.App. at 505, 53 P.3d 52). Thus, the majority affirms Nguyen while acknowledging that the logic used in that decision was faulty.
¶ 38 For the reasons stated above, the Nguyen decision is incorrect and harmful. Thus, Nguyen should be overruled.
¶ 39 Procedural Due Process. After overruling Nguyen, I would apply the Mathews test in order to determine the constitutionally required standard of proof in registered nursing assistant disciplinary proceedings. After balancing the private interests at stake, the risk of erroneous deprivation, and the governmental interests and burdens, I would hold that the preponderance standard is constitutionally sufficient.

1. The Private Interest
¶ 40 An individual has constitutionally protected interests in his or her professional license and reputation. See Haley, 117 Wash.2d at 732, 818 P.2d 1062. The Mathews test requires us to analyze the nature and extent of these interests. I agree with the majority that Ms. Ongom's registered nursing assistant's license represents her current vocational livelihood, majority at 1032, but I also recognize the procedural and economic realities that limit the interest she has in such a license. In order to become a registered nursing assistant, one need only pay a nominal $15 fee and submit an application. WAC 246-841-990(2); RCW 18.88A.080(1). In contrast with certified nursing assistants, a registered nursing assistant need not obtain any education or training for registration. See RCW 18.88A.020(4), .085; WAC 246-841-490. Thus, Division One of the Court of Appeals correctly concluded that "[t]he purpose of the [registered] nursing assistant license . . . appears to be solely to satisfy the need for a registry of those allowed to work in the field." Ongom v. Dep't of Health, 124 Wash.App. 935, 943, 104 P.3d 29 (2005). In contrast, "[a] physician completes many years of rigorous education, training, and examination at enormous expense." Id. at 942, 104 P.3d 29. Therefore, while a registered nursing assistant has a private interest in his or her license, this interest is less significant than those private interests that have justified application of an intermediate standard of proof in other cases. See, e.g., Addington, 441 U.S. at 428-31, 99 S.Ct. 1804 (clear and convincing evidence required for involuntary civil commitments); Santosky, 455 U.S. at 758, 102 S.Ct. 1388 (clear and convincing evidence required for termination of parental rights); Cruzan v. Mo. Dep't of Health, 497 U.S. 261, 284, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (clear and convincing evidence required for termination of an incompetent patient's life-sustaining medical treatment). Accordingly, because the interests at stake in the present case are of lesser magnitude than the interests at issue in Addington, Santosky, or Cruzan, the first Mathews factor favors application of the lower standard of proof.

2. The Risk of Erroneous Deprivation
¶ 41 In addition, under Mathews, this court should consider "the risk of an erroneous *1040 deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335, 96 S.Ct. 893; see also Santosky, 455 U.S. at 761, 102 S.Ct. 1388; Nguyen, 144 Wash.2d at 544, 29 P.3d 689 (Ireland, J., dissenting). In the present case, Ms. Ongom received substantial procedural safeguards that minimized the risk of error. She was given notice of the action, a public hearing before an unbiased tribunal, the right to present evidence and make arguments, the right to know the government's evidence, the right to have the decision limited to the evidence, the opportunity to be represented by counsel, a written record, a written statement of findings of fact and conclusions of law, and the right to judicial review. Ongom, 124 Wash.App. at 946, 104 P.3d 29 (citing ch. 18.130 RCW). Considering these procedural protections, I would hold that there is a relatively low risk of erroneous deprivation in this case. Thus, the second Mathews factor also weighs in favor of the preponderance standard.

3. The Governmental Interests and Burden
¶ 42 While a higher standard of proof would be unlikely to cause a large financial impact on the government, see Santosky, 455 U.S. at 767, 102 S.Ct. 1388, some additional cost is inevitable in order for the government to acquire and present sufficient evidence to satisfy the higher burden. Moreover, under the third Mathews factor, we should consider the governmental interest in protecting the public against abuse by health care providers. Specifically, the legislature has established a policy of "assur[ing] the public of the adequacy of professional competence and conduct in the healing arts." RCW 18.130.010; see also RCW 18.88A.010 (stating, "[t]he legislature declares that the registration of nursing assistants and providing for voluntary certification of those who wish to seek higher levels of qualification is in the interest of the public health, safety, and welfare"). The governmental interest in assuring competency of health care providers favors application of the preponderance standard.
¶ 43 In addition, the legislature has articulated a governmental interest in protecting vulnerable adults. See, e.g., ch. 74.34 RCW (creating a reporting system for abuse, neglect, or abandonment of vulnerable adults); ch. 9A.44 RCW (imposing heightened penalties for sex crimes against vulnerable adults); RCW 9.96A.060 (restoration of employment rights for felons does not include individuals employed by the department of social and health services if they have unsupervised access to vulnerable adults); RCW 18.20.125 (requiring inspections of boarding homes to protect vulnerable adults). This interest also favors application of the preponderance standard of proof.
¶ 44 Finally, the legislature has noted the existence of "the high and often critical turnover among the principal cadre of health care workers who provide for the basic needs of patients." RCW 18.88A.010. I acknowledge that the government has an interest in ensuring adequate access to health care providers and that this interest is furthered by a higher standard of proof. However, this interest is intertwined with the other governmental interests discussed above and should not be given independent consideration. The government's true interest is in protecting its citizens from incompetent health care providers. The interest in access to health care providers is undermined if the workers are incompetent. Thus, this court should not give much weight to an asserted governmental interest in ensuring access to potentially incompetent health care workers.
¶ 45 As demonstrated above, all three Mathews factors weigh in favor of the preponderance of the evidence standard of proof in registered nursing assistant disciplinary proceedings. Thus, I would uphold WAC 246-10-606, which establishes the preponderance of the evidence standard of proof in such proceedings.
¶ 46 Substantial Evidence. In a factual challenge to a lower court ruling, this court should grant relief only if the lower court's determination is not supported by substantial evidence. RCW 34.05.570(3)(e). Evidence is substantial if "the record contains `a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of *1041 the order.'" Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 588, 90 P.3d 659 (2004) (internal quotation marks omitted) (quoting King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000)).
¶ 47 Ms. Ongom failed to establish that the trial court's decision was not supported by substantial evidence. Ms. Ongom challenged the hearing testimony as "not credible" and argued that "it is just as probable that [she] is innocent of all wrongdoing." Pet. for Review at 11-12. This court is not well suited to make determinations of the credibility of witnesses. Port of Seattle, 151 Wash.2d at 588, 90 P.3d 659. Therefore, I would affirm the suspension of Ms. Ongom's registered nursing assistance license as supported by substantial evidence.[7]

CONCLUSION
¶ 48 I would overrule Nguyen. The Nguyen majority erred by misapplying precedent, thereby skewing procedural due process protection in favor of private interests. The Nguyen majority's incorrect application of the Mathews test will harm the government's ability to protect the public from incompetent health care workers. Thus, instead of relying on Nguyen to determine the constitutionally required standard of proof in registered nursing assistant disciplinary proceedings, I would conduct an independent analysis using the Mathews balancing test. After examining this case through the Mathews lens, I would hold that preponderance of the evidence is a constitutionally permissible standard of proof in registered nursing assistant disciplinary proceedings. Accordingly, because there is substantial evidence in the record supporting the superior court's determination that the State proved its case by a preponderance of the evidence, I would affirm Ms. Ongom's suspension.
WE CONCUR: MARY E. FAIRHURST, and BOBBE J. BRIDGE, JJ.
MADSEN, J. (concurring in the dissent).
¶ 49 As a result of this court's decision in Bang Nguyen v. Department of Health, 144 Wash.2d 516, 29 P.3d 689 (2001), some of this state's most vulnerable citizens are now even more at risk for abuse. Alzheimer's patients like the victim in this case, along with the developmentally disabled, mentally ill, and the elderly depend for their care on people licensed under chapter 18.88A RCW. Many of these citizens lack the ability to speak out or be heard when they suffer abuse from caregivers. Instead of protecting these vulnerable citizens, the majority of the court tips the balance of protection in favor of the licensee and against these vulnerable citizens. As a result of applying Nguyen in this case, the abuse, which the hearing officer found was proved by a preponderance of the evidence, will go without redress.
¶ 50 Although I signed the majority opinion in Nguyen, I agree with Justice Owens that Nguyen was wrongly decided on the law. And, its application in this case makes clear that it is also harmful and should be overruled.

DISCUSSION
¶ 51 Addressing first the legal error in Nguyen, this court was incorrect in defining the nature of the interest involved in holding a professional license. In particular, we erroneously concluded that the pursuit of a profession involves a property right as well as a constitutional liberty interest akin to the liberty interests of the criminally accused. As early as 1909, in connection with attorney discipline, this court stated that
[w]hile it is true that the practice of law is a lawful occupation in itself, it is not a natural right or a right guaranteed by the constitution. It is a privilege granted by *1042 the state, and may be surrounded with whatever restrictions the legislature may in reason prescribe[, e]ven to the extent of requiring any attorney, without compensation, to conduct the defense of destitute persons accused of crime.
State ex rel. Mackintosh v. Rossman, 53 Wash. 1, 3, 101 P. 357 (1909) (citations omitted).
¶ 52 Since 1938, when the United States Supreme Court decided United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), courts have uniformly held that economic regulations such as professional licensing laws are subject only to rational basis review. Indeed, in Steadman v. Securities & Exchange Commission, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), the Supreme Court implicitly concluded that there was no fundamental constitutional liberty interest at stake in a proceeding to revoke a license to pursue a profession or occupation, and hence found no due process entitlement to a burden of proof greater than a fair preponderance.
¶ 53 Although we were determining the level of scrutiny to be applied in a due process challenge, a majority of this court recently pointed out in Amunrud v. Board of Appeals, 158 Wash.2d 208, 143 P.3d 571 (2006), that neither this court nor the United States Supreme Court has characterized the right to pursue a particular profession as a fundamental right. Instead, courts have repeatedly held that the right to employment is a protected interest subject to rational basis review. By analogy, these decisions show that the preponderance standard is appropriate here to protect the interests at stake.
¶ 54 As the United States Supreme Court recently explained:
[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation.

Conn v. Gabbert, 526 U.S. 286, 291-92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (emphasis added). And the Supreme Court has made clear that "rational basis review" is the appropriate standard for reviewing such government licensing regulations. Barry v. Barchi, 443 U.S. 55, 61-62, 67-68, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (applying "rational basis" test in the equal protection and due process context to licenses for horse trainers). See also Medeiros v. Vincent, 431 F.3d 25, 29 n. 3 (1st Cir.2005) (it is "well settled" that there is no fundamental right to pursue a livelihood or occupation, and "legislation or regulation impinging upon such a right therefore is subject only to `rational basis' review, rather than `strict scrutiny'"); Cornwell v. Cal. Bd. of Barbering & Cosmetology, 962 F.Supp. 1260, 1271-72 (1997) (substantive due process challenges to regulations of occupations are "subjected to rational basis review," and "[t]he regulation may only be struck down if there is no rational connection between the challenged statute and a legitimate government objective"); Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313-14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (no fundamental right to government employment and applying rational basis review to restrictions on government employment); Schware v. Bd. of Bar Examiners of N.M., 353 U.S. 232, 238, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (no fundamental right to practice law); Nebbia v. New York, 291 U.S. 502, 527-28, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (the right to work in a particular profession or trade is a protected right and subject to rational regulation); Dittman v. California, 191 F.3d 1020, 1031 (9th Cir.1999) (applying rational basis review to requirements for acupuncture license); Meyers v. Newport Consol. Joint Sch. Dist. No. 56-415, 31 Wash. App. 145, 639 P.2d 853 (1982) (holding that the right to employment is not fundamental and applying rational basis review); In re Revocation of License to Practice Med. & Surgery of Kindschi, 52 Wash.2d 8, 319 P.2d 824 (1958) (applying rational basis review to license revocation).
¶ 55 Other state courts have reached the same conclusion. See, e.g., In re Revocation of License of Polk, 90 N.J. 550, 562, 570, 449 A.2d 7 (1982) (interest in a professional license deserves protection, but not a fundamental right; such licenses are "`always subject to reasonable regulation in the public interest'" (quoting B. Jeselshon, Inc. v. Atlantic *1043 City, 70 N.J. 238, 242, 358 A.2d 797 (1976))); Petition of Grimm, 138 N.H. 42, 50, 635 A.2d 456 (1993) ("[t]he right to work in one's occupation has never been placed on equal footing with fundamental personal rights," applying rational basis review to licensing regulation for medical doctors).
¶ 56 In light of these cases, including our recent decision in Amunrud, it is clear that Nguyen is wrong in describing the interest in a professional license as a liberty interest akin to the liberty interests of the criminally accused and wrong in requiring the clear, cogent, and convincing standard to protect that interest. Additionally, requiring a higher standard of proof than the preponderance standard is inconsistent with this court's recognition in Amunrud that under due process, a government licensing regulations need pass only rational basis scrutiny.
¶ 57 The Nguyen court also erred in determining what governmental interest is to be weighed in the balancing test of Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In Nguyen the court gave great weight to the economic factors involved in providing a predeprivation hearing but, though acknowledging the government interest in protecting the public, gave this more important interest insufficient weight. As the Wisconsin court persuasively points out, "the state is concerned with the direct and immediate threat to physical health, safety and welfare. The consequences of incompetent or unprofessional care or treatment may be highly injurious, and even fatal." Gandhi v. State Med. Examining Bd., 168 Wis.2d 299, 309, 483 N.W.2d 295 (1992) (conducting a Mathews balancing test and concluding that a physician's interest in his professional license is adequately protected under a preponderance standard). Here, as Justice Owens points out, the legislature has a strong interest in protecting vulnerable adults. Dissent at 1040. This case demonstrates why a preponderance standard is not sufficient to protect this interest.
¶ 58 Finally, although the department has not challenged the hearing officer's conclusion that the evidence presented did not meet the clear, cogent, and convincing standard, I believe the hearing officer is wrong on this point, based on his findings of fact. In written conclusions of law following the hearing, the examiner stated that the program did not prove the allegations by clear and convincing evidence because, he said,
there are conflicting witness statements whether the Respondent touched Resident A or threw anything at Resident A. Additionally, there was a period of time between the time [sic] the incident in question, and when Resident A's injury was diagnosed or assessed. Finally, the [sic] was evidence to show that Resident A was combative and known to kick out on her own.
Clerk's Papers (CP) at 112 (Conclusion of Law 4.6).
¶ 59 The reasons given by the hearing officer for his conclusion are not supported by his findings of fact or by the record. First, although the hearing officer cited conflicting witness statements as a concern, he nevertheless found a violation, and this fact indicates that he resolved the credibility question against the respondent. His implicit resolution of the credibility issue is supported by the record and by his finding of fact showing that the respondent gave two conflicting versions of events, at one point denying kicking the resident and at another point stating that she tripped over the resident's leg. CP at 109 (Finding of Fact (FOF) 3.8). Second, the hearing examiner is simply wrong in his assertion that a period of time elapsed before the resident was examined. Uncontroverted evidence establishes that witness Rebecca Bristlin took the resident for an immediate assessment and that the resident complained of pain in her ankle and wrist. Exs. 1, 3.
¶ 60 In addition to these flaws in conclusion of law 4.6, the hearing examiner made the erroneous finding that the injury to the resident's ankle "was not consistent with the type of repeated trauma described in the incident report." CP at 110 (FOF 3.12). This finding has no support in the record. Rather, the record demonstrates that the treatment providers who examined and treated the resident proceeded on the belief that the injury resulted from the resident being *1044 kicked and that the resident suffered bruising on her leg which worsened to an abscessed condition. It is also significant that the supervising nurse who investigated the incident and interviewed the witnesses reported the incident to the police.
¶ 61 The evidence here satisfies the preponderance of the evidence standard that should apply. Moreover, the evidence in the record also meets the clear and convincing standard that the majority says must be applied. Therefore, I would uphold the sanction imposed in this case under the majority's analysis as well.
NOTES
[1] The court ultimately dismissed the assault charge sua sponte.
[2] "You black bastard, why don't you leave me alone; all my properties have been stolen by black people." Clerk's Papers at 88 (Statement of Alice Ongom).
[3] The dissent suggests we overrule Nguyen and adopt a preponderance of the evidence standard for all professional disciplinary proceedings. As a rule, we decide only issues properly raised by the parties in the petition for review or answer. See RAP 13.7(b) ("If the Supreme Court accepts review of a Court of Appeals decision, the Supreme Court will review only the questions raised in the motion for discretionary review. . . ."); RAP 13.4(d) ("If the party wants to seek review of any issue which is not raised in the petition for review, that party must raise that new issue in an answer."). In the event we raise an issue sua sponte, we generally request additional briefing from the parties. RAP 12.1(b). And see, e.g., State v. Aho, 137 Wash.2d 736, 741, 975 P.2d 512 (1999). The State failed to argue we overrule Nguyen in its answer to the petition for review, but first raised the issue in an unsolicited supplemental brief. This is a wholly adequate and sufficent ground to deny review. See In re Custody of Brown, 153 Wash.2d 646, 651, 105 P.3d 991 (2005); State v. Collins, 121 Wash.2d 168, 179, 847 P.2d 919 (1993); Clam Shacks of Am., Inc. v. Skagit County, 109 Wash.2d 91, 98, 743 P.2d 265 (1987) (declining to review issue because raised only in supplemental brief). Furthermore, the issue "is precluded under RAP 2.5(a) as one raised for the first time on appeal" as the state "has not established its entitlement to an exception under the rule." Hoflin v. Ocean Shores, 121 Wash.2d 113, 130-31, 847 P.2d 428 (1993) (footnote omitted). Because "the ends of justice" do not demand waiver or alteration of our rules of appellate procedure, RAP 1.2(c), reconsideration of Nguyen is inappropriate.
[4] The dissent does not argue Nguyen can be distinguished.
[5] 

More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews, 424 U.S. at 334-35, 96 S.Ct. 893.
[6] The dissent cites Steadman v. Securities & Exchange Commission, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) for the proposition that "upholding the preponderance standard in a disciplinary proceeding against a stockbroker" sheds light on the constitutional burden of proof standard set forth in Addington. Dissent at 1037-38. To the contrary, Steadman was decided on statutory grounds wherein "[p]etitioner makes no claim that the Federal Constitution requires application of a clear-and-convincing-evidence standard." Steadman, 450 U.S. at 97 n. 15, 101 S.Ct. 999.
[7] Mathews, 424 U.S. at 347, 96 S.Ct. 893.
[8] We, however, deny Ms. Ongom's request for reasonable attorney fees under Washington's equal access to justice act, RCW 4.84.350(1), because we find the agency action was substantially justified in light of inconsistent decisions from the Court of Appeals: compare Nims, 113 Wash.App. 499, 53 P.3d 52 with Eidson v. Department of Licensing, 108 Wash.App. 712, 32 P.3d 1039 (2001).
[1] To this end, there is substantial evidence on the record to support the presiding judge's determination that the department did not prove by clear and convincing evidence that Ongom's conduct violated RCW 18.130.180(24) (abuse of a client). The record shows that Ongom and Rebecca Bristlin provided directly conflicting testimony and that Ongom's, not Bristlin's, version of the event or events in question was supported by a third member of the staff, Franciska Chmielewski, who stated under oath that she did not see Ongom throw anything at the resident or otherwise touch her.
[1] The majority's reliance on RAP 13.7(b) amounts to judicial sleight of hand. With one hand, the majority cites Nguyen to support its decision while, with the other, it avoids revisiting Nguyen by asserting RAP 13.7(b). Majority at 1031 n. 3. In this case we were asked to decide whether WAC 246-10-606 provides adequate procedural due process. Pet. for Review at 9. Since Nguyen appears to control this constitutional question, we must necessarily confront the issue of whether Nguyen was correctly decided. Accordingly, the State argued to overrule Nguyen in its supplemental brief and at oral argument. See Suppl. Br. of Resp't at 14; Wash. State Supreme Court oral argument, Ongom v. State, No. 76618-5 (Nov. 17, 2005), audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. However, instead of considering the merits of the State's argument that Nguyen was wrongly decided, the majority's reliance on Nguyen strengthens a decision inconsistent with the due process holdings of this court and the United States Supreme Court. RAP 13.7 is not to be used as a shield to deflect substantive attention from a wrongly decided case. See RAP 1.2(a); see also, e.g., In re Pers. Restraint of Carlstad, 150 Wash.2d 583, 597, 80 P.3d 587 (2003) (Sanders, J., dissenting) ("Together RAP 1.2(a), RAP 1.2(c), and RAP 18.8(a) make clear that an appellate court should liberally interpret the Rules of Appellate Procedure and alter any provision included therein when necessary to promote justice and to consider cases and issues on their merits."); City of Tacoma v. William Rogers Co., 148 Wash.2d 169, 182 n. 7, 60 P.3d 79 (2002) (Sanders, J., dissenting) ("[T]here is no bar to this court considering issues not raised at trial when the interests of justice so dictate.") (citing RAP 1.2(c)).
[2] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[3] The "Mathews test" is as follows:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
424 U.S. at 335, 96 S.Ct. 893 (citing Goldberg v. Kelly, 397 U.S. 254, 263-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). The Court has used the Mathews test to determine the correct standard of proof in administrative hearings. E.g., Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
[4] This analysis is not unique to our state. The Ninth Circuit Court of Appeals also considers the substantive governmental interests when applying the Mathews test. See, e.g., Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir.1998) (considering the government's interests in administering immigration laws and in preventing document fraud); First Nat'l Bank & Trust v. Dep't of the Treasury, 63 F.3d 894, 896 (9th Cir.1995) (considering the government's interest in protecting bank depositors); Stypmann v. City & County of San Francisco, 557 F.2d 1338, 1343 (9th Cir. 1977) (considering the state's interest in removing vehicles from streets and highways).
[5] As opposed to the fact-specific considerations proffered by the Nguyen majority, the dissent considered the following case-neutral factors in determining that there was a low risk of erroneous deprivation:

(1) an unbiased tribunal; (2) notice of the proposed action and the grounds asserted for it; (3) an opportunity to present reasons why the proposed action should not be taken; (4) the right to call witnesses; (5) the right to know the evidence against one; (6) the right to have the decision based only on the evidence presented; (7) [the right to] counsel; (8) the making of a record; (9) a statement of the reasons; (10) public attendance; (11) judicial review.
Nguyen, 144 Wash.2d at 544-45, 29 P.3d 689 (Ireland, J., dissenting) (citing Henry J. Friendly, "Some Kind of Hearing," 123 U. Pa. L.Rev. 1267, 1279-95 (1975)). Like Dr. Nguyen, Ms. Ongom received the benefit of all of the above factors.
[6] At issue in this case is the standard of proof necessary to provide the minimum required procedural due process protection. States are free to enact statutes requiring higher standards of proof. Nonetheless, at least 21 other jurisdictions have held that the preponderance standard is constitutionally appropriate and applies to interests greater than "mere money," such as those at stake in professional disciplinary proceedings. See, e.g., Granek v. Tex. Bd. of Med. Exam'rs, 172 S.W.3d 761 (Tex.App.2005); Parrish v. Ky. Bd. of Med. Licensure, 145 S.W.3d 401 (Ky.Ct.App. 2004); Snyder v. Colo. Podiatry Bd., 100 P.3d 496 (Colo.Ct.App.2004); Gallant v. Bd. of Med. Exam'rs, 159 Or.App. 175, 974 P.2d 814 (1999); In re Smith, 169 Vt. 162, 730 A.2d 605 (1999); Giffone v. De Buono, 693 N.Y.S.2d 691, 263 A.D.2d 713, (1999); Anonymous (M-156-90) v. State Bd. of Med. Exam'rs, 329 S.C. 371, 496 S.E.2d 17 (1998); Ga. Bd. of Dentistry v. Pence, 223 Ga.App. 603, 478 S.E.2d 437 (1996); In re Pet. of Grimm, 138 N.H. 42, 635 A.2d 456 (1993); Pickett v. Utah Dep't of Commerce, 858 P.2d 187 (1993); Gandhi v. State Med. Examining Bd., 168 Wis.2d 299, 483 N.W.2d 295 (1992); Boswell v. Iowa Bd. of Veterinary Med., 477 N.W.2d 366 (Iowa 1991); Johnson v. Ark. Bd. of Exam'rs in Psychology, 305 Ark. 451, 808 S.W.2d 766 (1991); In re Disciplinary Action Against Wang, 441 N.W.2d 488 (Minn.1989); Lyness v. State Bd. of Med., 127 Pa. Commw. 225, 561 A.2d 362 (1989), rev'd on other grounds, 529 Pa. 535, 605 A.2d 1204 (1992); Foster v. Bd. of Dentistry, 103 N.M. 776, 714 P.2d 580 (1986); Rucker v. Mich. Bd. of Med., 138 Mich.App. 209, 360 N.W.2d 154 (1984); In re Revocation of License of Polk, 90 N.J. 550, 449 A.2d 7 (1982); Ferguson v. Hamrick, 388 So.2d 981 (Ala.1980); Sherman v. Comm'n on Licensure to Practice the Healing Art, 407 A.2d 595 (D.C.1979); In re Wilkins, 294 N.C. 528, 242 S.E.2d 829 (1978).
[7] The majority states that one witness, Ms. Chmielewski, "supported Ongom's version of the events." Majority at 1030. However, Ms. Chmielewski was not present at the hearing. In Ms. Chmielewski's affidavit, she declared without elaboration, "I did not see Alice [Ongom] touch or throw anything at [the resident]." Administrative Record (AR) at 173. Ms. Umagat testified that Ms. Chmielewski was in the dining room at the time of the incident but "told me she didn't actually observe the incident." AR at 220. If Ms. Chmielewski did not observe the incident, then her technically true statement that she did not "see" any touching or throwing neither supports nor contradicts Ms. Ongom's version of events.